87  521
88  375
87  521
92  668

87  521
e101  8

## Richmond.

N. & W. R. R. Co. v. Supervisors of Smyth Co.

March 19th, 1891.

1. RAILROADS—*Right of county to tax.*—County supervisors are authorized to levy a tax on railroad property in their county at any time after the passage of the act of February 27, 1880, based on the State assessment made previous to that act; and where the levy recites that fact, the levy will be presumed legal.

2. IDEM—*Receiver—Estoppel.*—Where, during foreclosure suit, such tax is paid and its payment is approved by the court, purchasers of the railroad, who were parties to the suit, cannot recover the tax as illegally levied.

Argued at Wytheville.    Decided at Richmond.

Error to judgment of circuit court of Smyth county, rendered on the 6th day of September, 1888, affirming a judgment of the county court of said county, rendered on the 16th day of May, 1887, upon an appeal from the action of the board of supervisors of said county disallowing a certain claim of the Norfolk & Western Railroad Company against Smyth county, to recover from said county certain taxes alleged to have been wrongfully levied and collected by said county from said company for the year 1880.

*W. H. Bolling,* for the plaintiff in error.

*S. D. Jones,* and *N. C. St. John,* for the defendant in error.

Richardson, J., delivered the opinion of the court.

The facts are these: At an adjourned meeting of the board of supervisors for Smyth county, held on the 9th day of August, 1880, said board levied, for county and school purposes, upon the roadway and tracks, depots, depot grounds, station buildings, and other real estate of the Atlantic, Mississippi & Ohio Railway Company, whose road passes through said county, sixty-five cents on every $100 of the value thereof in the county of Smyth; the tax so levied amounting in the aggregate to the sum of $1,053.20, which levy was based upon the assessment per mile of the same property made by the State for purposes of State taxation, and was equal to, and not in excess of, the tax assessed and levied upon other property in said county for county purposes.

At the time of this levy upon the property of the Atlantic, Mississippi & Ohio Railway Company, within said county, its road was in the hands of receivers in the suit of *Barlow and Duncan, Surviving Trustees, &c.,* v. *The Atlantic, Miss. & Ohio R. R. Co. and al.,* in the circuit court of the United States for the Eastern District of Virginia. Under a decree rendered in said cause by the said circuit court of the United States, the entire line of railway, property and franchises of said company was sold, and Clarence H. Clark became the purchaser for and on account of himself and his associates.

In the settlement of their accounts of disbursements, the receivers, among other things, reported the identical tax in question, which was allowed by the master in said cause, and was by him reported to court, and the report was confirmed without objection either by the Atlantic, Mississippi & Ohio Railway Company or the purchasers thereof, or any other party to the cause, and the receivers were discharged.

The road having been purchased by Clarence H. Clark and his associates, and he, the said Clarence H. Clark, having declared that the name of the corporation created by the said

purchase should be the Norfolk & Western Railroad Company, the property was conveyed to the last-named company ; all of which was approved by a decree of said circuit court of the United States for the Eastern District of Virginia, entered on the 4th of April, 1881.

The tax thus levied by the board of supervisors upon the property of the Atlantic, Miss. & Ohio Railroad Company, within the county of Smyth, was paid by the receivers without protest, and without any step taken by them, so far as shown by the record, to resist its collection.   At a meeting of said board, near five years after the payment of this tax, to-wit: on the 24th day of October, 1885, the Norfolk & Western Railroad Company, the successor of the Atlantic, Miss. & Ohio Company, prosecuted their claim against Smyth county for this amount of $1,053.20, for "taxes levied and collected for the year 1880 and 1881, without warrant or authority of law"; which claim was continued by the board for consideration and investigation.   And at a meeting of the board, held on the 25th of November, 1885, said claim was further considered, when said board, after due consideration, entered an order disallowing the whole of said claim ; and thereupon the Norfolk & Western Railroad Company took an appeal to the county court of Smyth county, wherein the case was heard on the 16th day of May, 1887, when a judgment was entered affirming the action of the board of supervisors.   To the judgment of the county court the plaintiff company obtained a writ of error from the judge of the circuit court of said county, and thereupon the case was, on the 6th day of September, 1888, heard, when a judgment was entered by said circuit court affirming the judgment of the county court, and to the last-named judgment a writ of error was allowed by one of the judges of this court.

I. The main question to be considered is, was the tax in question properly levied by the board of supervisors of Smyth county?   We are clearly of opinion that this question can

receive none other than an affirmative answer. It is, however, insisted on behalf of the plaintiff in error, that the tax in question was levied and collected without warrant or authority of law. In support of this contention it is said in argument, that the tax was levied by the board of supervisors of Smyth county upon an assessment made by the commissioners of the revenue for said county. This is an assumption that is wholly unwarranted, and seems to have no other foundation than the fact that the levy was found on the books of the commissioners of the revenue; when the order of the board of supervisors, making the levy, shows on its face that the levy was made in strict pursuance of law, and was based upon the previous assessment by the State of the same property for State purposes, as authorized by the statute approved February 27, 1880, entitled, "An act to tax railroads in certain cases for county and school purposes." That act is a brief one, and reads as follows:

"1. Be it enacted by the general assembly, That it shall be lawful, and authority is hereby given to the supervisors of a county, to levy a tax on the roadway and track, depots, depot grounds and lots, station buildings, and other real estate of a railroad company whose road passes through such county. Such tax shall be equal to the tax imposed upon other property for county and school purposes, and based upon the assessment per mile of the same property made by the State for its purposes."

"2d. All acts and parts of acts in conflict with this act are hereby repealed."

"3d. This act shall be in force from its passage."

This act, of course, only authorizes the boards of supervisors of the several counties to levy the tax upon such real estate of any railroad companies as is within the limits of the counties respectively, and are not by their charters exempted from taxation. Now, as already stated, the order of the board of supervisors, making the levy in question, was, as shown upon

its face, made subsequent to and in strict pursuance of the
above quoted act of February 27th, 1880, and the tax levied
was, as required by said act, "based upon the assessment per
mile of the same property made by the State for its purposes,
which is equal to and not in excess of the tax assessed upon
other property for county purposes." It is, therefore, obvious
that there is nothing in the fact that the levy made by the
board of supervisors was entered on the commissioner's
books. Such entry was in all probability made as a mere
matter of convenience. But however it may have occurred,
it was not required by law, was in no way material, nor had
it any legal effect. The commissioners of the revenue, and
the commissioner's books, have nothing whatever to do with
the assessment and levy of taxes on railroads.

The several counties are but political sub-divisions of the
State; and, like county organization and county officers, exist
only by virtue of the constitution and laws of the State, and
were created as convenient instrumentalities for the adminis-
tration of the State government. The counties, as such, can
confer no authority other than such as is conferred by law;
nor can any county officer perform any function without like
authority. Hence, the authority delegated to the counties,
and the jurisdictional functions to be performed by county
officers, are, in general, restricted by the legislature to the limits
of the counties respectively; and all that is done by way of
assessing and levying taxes upon persons and property of both
individuals and corporations, for either State or county pur-
poses, must be done in obedience to law, and in the manner
prescribed by the constitution and laws of the State. It fol-
lows, therefore, that in assessing and levying taxes for county
purposes, the county authorities are necessarily limited to the
subjects of taxations prescribed by the State for its purposes.
From small beginnings county levies have grown into a mag-
nitude commensurate with the increase of population and the
development of society. And it has been well said that, "An

examination of the various acts of the legislature on the sub-ject will show that for many years the county levies and poor rates were confined to the tithables within their limits. Real and personal property was not made the subject of county levy until long after the revisal of 1819." Staples, J:, in *Va. and Tenn. R. R. Co.* v. *Washington county*, 30 Gratt., 471.

Prior to the adoption of the present constitution of Virginia, no authority was ever conferred by law, either constitutional or statutory, upon the several counties to levy taxes upon the property of railroad companies within their limits. The uniform policy of the legislature has been to treat a railroad as an entirety, to be taxed as such, and has been opposed to fragmentary assessments and levies by the counties respectively, and for the obvious reason that any such mode of assessment and levy would be necessarily destructive of the cardinal principle of equality and uniformity of taxation prescribed by the constitution.

By § 2, Art. 7, of our present constitution, it is, among other things, provided : "The supervisors of the districts shall constitute the board of supervisors for that county, whose duty it shall be to audit the accounts of the county, examine the books of the commissioners of the revenue, regulate and equalize the value of property, fix the county levies for the ensuing year, and perform any other duties required of them by law."

By § 1, Art. 10, of the same instrument, it is provided : "Taxation, except as hereinafter provided, whether imposed by the State, county, or corporate bodies, shall be equal and uniform, and all property, both real and personal, shall be taxed in proportion to its value, to be ascertained as prescribed by law. No one species of property, from which a tax may be collected, shall be taxed higher than any other species of property of equal value."

Relying on these provisions as self-executing, and as conferring upon the counties the right to assess and levy taxes

upon the property of railroad companies within their limits, independently of any legislative authority, the county of Washington, in 1871, undertook to assess and levy a tax upon the property of the Va. & Tenn. R. R. Co., within that county. The collection of the tax was resisted by the railroad company, but both the county and circuit courts of that county affirmed the action of the county authorities, and thereupon the case was brought to this court, and thus arose the case of *Va. & Tenn. R. R. Co.* v. *Washington county, supra.* In delivering the opinion of this court in that case, after calling attention to the fact that § 1, Art. 10, of the constitution was not self-executing, and that legislation was necessary to put it into operation, Judge Staples said: "And until the legislature makes the necessary provision for carrying the constitution into effect in this particular, neither the supervisors of the county nor the courts can furnish a remedy or supply the want of proper legislation." Hence the action of the circuit and county courts of Washington county, affirming the action of the county authorities, was reversed and annulled, and the action of the assessors and board of supervisors of said county was held to be *ultra vires* and void.

That decision, doubtless, called the attention of the legislature to the subject, and to the necessity for legislation to render operative said § 1, Art. 10, of the constitution, which provides for an equal and uniform tax upon all property to be provided for by law; and realizing the inequality and injustice resulting from a want of the needed legislation, the legislature passed the act of February 27, 1880 (Acts 1879–'80, ch. 106, p. 82, before referred to), by which it is provided, That it shall be lawful, and authority is hereby given to the supervisors of a county to levy a tax on the roadway and track, depots, depot grounds and lots, station buildings, and other real estate of railroad company whose road passes through such county. Such tax to be equal to the tax imposed upon other property for county and school purposes, and based upon the assessment

per mile of the same property made by the State for its purposes.

By this statute authority was for the first time conferred upon counties to tax the property of railroad companies within their limits, and they were restricted to the real estate of such companies, the tax to be on the basis of the State's assessment for its purposes. It will be observed, too, that no authority is given to the counties to *assess* such property, but only to levy the tax, the duty of assessment in such cases being imposed upon the board of public works, as provided by the statute now to be referred to.

By the act approved March 13th, 1877, Acts 1876–7, chap. 156, p. 136, it is, among other things, provided (sec. 20) that every railroad and canal company not exempt from taxation by virtue of its charter, shall report annually, on the first day of June, to the auditor of public accounts, the estimated value of its real and personal property of every description, as of the first day of February of each year, classifying the same as in said section prescribed; and also requiring every such company to report, on or before the first day of June of each year, the gross and net receipts of the road or canal for the twelve months preceding the first day of February of each year; and in all cases requiring the report to be so made as to show the date on which it is made, and further requiring such reports to be verified by the oath of the president or other proper officer: and prescribing that upon the receipt of every such report, it shall be the duty of the auditor of public accounts to lay the same before the board of public works, who shall, after thirty days' notice previously given to the president. treasurer, or other proper officer, proceed to ascertain and *assess* the value of the property, so reported, upon the best and most reliable information that can be procured, &c. And further providing that a certified copy of the assessment thus made shall be immediately forwarded by the secretary of the board to the president or other proper officer of every railroad

or canal company so assessed, whose duty it shall be to pay into the treasury of the State, within sixty days after the receipt thereof, the tax which may be imposed thereon by law.

Thus the State, by appropriate legislation, reserved to itself the right to *assess*, by and through its board of public works, the property of all railroad companies within her borders, and required the tax so assessed to be paid directly into the State treasury.

And then, by the act approved February 27th, 1880, above referred to, authority was conferred upon the board of supervisors of a county, not to *assess*, but simply to levy a tax on the real estate of railroads within the limits thereof for county and school purposes. And in this way sec. 1, Art. 10, of the Constitution, prescribing equal and uniform taxation, was, for the first time, carried fully into effect.

Now, the provisions of the act approved March 13th, 1877, prescribing the mode of assessing the property, real and personal, of railroads for State taxation, and the act of February 27th, 1880, authorizing the board of supervisors of a county to levy a tax, for county and school purposes, on the real estate of railroads within such county, and on the basis of the State's assessment per mile of the same property for its purposes, were in force when the tax in question was levied by the board of supervisors of Smyth county. And the last named act of February 27th, 1880, having been in force from its passage, and the order of the board of supervisors laying the levy showing, on its face, that the levy was based on the State's assessment, and it not being pretended that the railroad company had been subjected to any other levy for county and school purposes for the year in question, or that a double tax, or tax in excess of that upon other property for county and school purposes was imposed, we fail to perceive any principle upon which the real estate of the railroad company should be exempted from the levy for county and school purposes for that year.

II. But it is contended that the right to levy this tax was not acquired until the year 1881. There is no solid ground upon which this contention can rest.

The act of March 13th, 1877, prescribing the manner of assessing railroad property for State purposes, was in no way affected by the subsequent act of February 27th, 1880, conferring authority upon the board of supervisors of a county to levy a tax, for county and school purposes, upon the real estate of any railroad company within such county. We are bound to presume, in the absence of anything to the contrary, that the board of public works regularly made the annual assessments of all railroad property required of it by said act of March 13th, 1887, including that for the year 1880. This being so, on the passage of the act of February 27th, 1880, it became the duty of the board of supervisors to make the levy in question, and not to have done so would have been a serious dereliction of duty, prejudicial to the rights of other taxpayers, who were entitled to a *pro rata* assessment and levy upon the real estate of the railroad company. The contention that the right to make the levy did not accrue until 1881, is opposed to both the letter and spirit of the constitutional and statutory provisions above referred to. The board of supervisors had the right to make the levy, even though the county levy had previously been made and completed as to other subjects of taxation. See *B. & O. R. R. Co.* v. *Koontz, Treasurer*, 77 Va., 698; *S. V. R. R. Co.* v. *Supervisors of Clark County*, 78 Va., 269, and the very late case of *County of Prince George* v. *A. M. & O. R. R. Co.*, 87 Va., p. 283.

These cases, in every essential particular, rule the case in hand.

III. There is no merit in the claim that, by virtue of the decree of the circuit court of the United States for the Eastern District of Virginia, the Norfolk and Western R. R. Company, the purchaser of the roadway, property and franchises of the

Atlantic, Mississippi and Ohio Railroad Company, is entitled
to have this tax refunded to it as the purchaser and successor
of said last-named company.     It is true that by operation of
the statute, § 44, ch. 61, Code 1873, the sale and conveyance of
the A. M. & O. Railroad to the Norfolk and Western R. R. Co.,
the first-named company was *ipso facto* dissolved, and the pur-
chasers forthwith became a corporation by the name of the Nor-
folk and Western R. R. Co., as set forth in the conveyance, and
that the sale and conveyance passed to the purchaser, not only
the works and property of the company as they were at the
time of making the deed of trust or mortgage, but any works
which the company may, after that time and before the sale,
have constructed, and all other property of which it was pos-
sessed at the time of the sale, other than debts due to it.     The
language "other than debts due to it" would seem to preclude
any claim of the Norfolk and Western R. R. Co. to have this
tax refunded to it as the purchaser of the Atlantic, Mississippi
and Ohio Railroad, and as the successor of that company.

Moreover, the Atlantic, Mississippi and Ohio Company and
the purchaser of its road, now the Norfolk and Western R. R.
Co., were before the said circuit court of the United States
when the receivers settled their accounts, as such, in the suit
of *Duncan and Burlow, Surviving Trustees,* v  said *Atlantic, Miss.
and Ohio R. R. Co.*, wherein they were allowed, as a proper
item of disbursement, the identical sum here in controversy;
and having acquiesced in such settlement, it is too late now
for the Norfolk and Western Company, as the successor of the
Atlantic, Mississippi and Ohio, to claim the right to have this
tax refunded to it.     The tax in question was paid before the
purchase by the Norfolk and Western Company, so that the
fund here involved could not have been contemplated as em-
braced in the purchase.     Again, the decree of said circuit
court, after charging the fund in the hands of the receivers
with certain claims enumerated therein, "adjudged and de-
creed, that the balance of the said proceeds of sale and the

funds in the hands of the receivers, &c., be paid over to the Norfolk and Western Railroad Company, &c." The tax in question was no part of the proceeds of sale, nor was it in the hands of the receivers. Nor are there in said decree any sufficient words to pass to the Norfolk and Western Railroad Company the right to demand and have the fund in question; nor can there be any just ground whatever for the claim asserted. The tax was properly levied and collected by the authorities of Smyth county, and the board of supervisors of said county rightly disallowed the claim in question. And it follows that there is no error in the judgments of either the county or circuit court of said county, and therefore the judgment of the circuit court of Smyth county must be affirmed.

JUDGMENT AFFIRMED.