# CHARLESTON.

## STATE *v.* BALTIMORE & O. R. Co.

Submitted June 6, 1895—Decided November 13, 1895.

1. COLLECTION OF TAXES—RAILROAD TAXES—MOTION TO RECOVER.

   A motion under chapter 35 of the Code will not lie to recover taxes assessed under section 67, chapter 29, upon the property of a railroad company.

2. COLLECTION OF TAXES—STATUTORY REMEDIES.

   Where the statute prescribes a mode for the collection of taxes, no suit lies therefor, unless allowed by statute.

3. JUDGMENT—CAUSE OF ACTION—WITHOUT PREJUDICE.
    Where a motion, and notice of it, state facts which do not con-
    stitute cause of suit, there is no error in omitting from the judg-
    ment of dismissal the words "without prejudice."

D. B. LUCAS and W. P. HUBBARD for plaintiff in error.
D. B. LUCAS cited 19 Gratt. 103; 27 Gratt. 110, 800; 1 H. &
M. 454, 468; 2 Desty on Tax. 706; Burroughs on Tax. 253;
Cooley on Tax. 13, n. 1; Id. 300; Const. Art. III, s. 13;
Code, c. 35, ss. 1, 2, 3; Id. c. 29, s. 67; Id. c. 32, ss. 46, 51a,
par 10, 11; Code Va. (1860) c. 42; Code (1868) p. 447,
note; Acts 1882, c. 18; Code, c. 85, s. 25; 29 W. Va. 673;
18 W. Va. 441; 19 Wall. 227, 237, 238, 239; 21 Gratt. 513;
Code, c. 30, s. 26; Id. c. 35; 102 U. S. 514; 30 Gratt. 474;
Code, c. 123; s. 1, par 2, 5; Acts 1837 (Va.) p. 129; Acts
1847 (Va.) p. 86; 6 W. Va. 338; 3 W. Va. 319; 3 Black.
Comm. *159, *160; 3 Rob. Pr. (New ) 384; 17 S. E. Rep. 10,
11; 66 N. C. 206; Rap. & L. Law Dict. pp. 352, 396; 16 Cal.
332; 2 Anst. 558; 1 Mason, 482; 42 La. Ann. 1135; 82 Me.
152; 27 Gratt. 800; 21 Gratt. 513; 18 Gratt. 137; 11 Gratt.
103; 6 A. & E. 70; 1 Chit. Plead. 682; 4 B. & A. 655.

JOHN A. HUTCHINSON for defendant in error, cited Dwar-
ris on St. (2nd Ed.) 621; 71 N. Y. 487; 2 Coke, 46 a.; Brooms
Legal Max. 625; 7 B. & C. 596; 28 Eng. L. & Eq. 133; 2 B.
& Ad. 592; 15 Q. B. 724; 21 Wis 496; 7 Wall. 482; 2 Plowd.
459-465; 18 Wall. 301; 9 Bacon Abr. 246 (Bouvier Ed.);
Endlich on Int. §§ 27, 73, 86, 122; Bacon Max. 10; 7.
East, 128; 2 Leigh, 617; 20 Cal. 351; Burrill Law Dic.;
Webster's Dic.; Anderson's Law Dic. Verb "Assess.";
Code, c. 121, s. 6; 2 Mfd. 228; 2 H. & M. 54; 1 Rob. (old)
Prac. 589; 1 Call. 455; 22 W. Va. 308; 92 N C. 185; 1 Pe-
ters, C. C. 199; 36 Ohio St. 347; 29 Atlantic Rep. 327; 101 U.
S. 568; 8 How. (U. S ) 210; 15 Peters, 233; 1 Bart. Ch. Prac.
351; Code, 1868, c. 29, 30; Code, 1887, c. 29, 30; Code 1887,
c. 29, s. 67, p. 188; Code, c. 30, s. 7; 2 McCord, 55; Cooley
on Taxation, 438; 35 La. Ann. 301; Id. 329; 18 W. Va. 441;
13 Wall. 506; 50 Me. 376; 8 Metc. 394; 33 Mo. 125; 26 N. J.
L. 598; 26 Wend. 66; 26 Vt. 482; 7 Wall. 80; 56 N. H. 158;
26 La. Ann. 697; 20 Cal. 350; 6 Mass. 44; 7 Mo. App. 428;
4 Geo. 68; 35 Mo. 334; 58 N. W. Rep. 594; 56 N. W. Rep.

934; Endlich on Interp. Stat. § 465, and cases cited in note; 1 B. & Ad. 859; Code, c. 39, s. 1; Code, c. 30, ss. 5 to 17 inclusive; 28 Pa. St. 9; 20 Wall 663; Code, c. 45, s. 1; Acts 1877, c. 31; Acts 1872-3, c. 123 ; Acts 1879, c. 74; Acts 1881, c. 15; Acts 1882, c. 147; Hammond's Blackstone, 1 vol. 137; Cooley's Const. Lim. (6th Ed.) 635.

BRANNON, JUDGE:

A motion was instituted on 7th day of September, 1885, in the Circuit Court of Ohio county, where the seat of government then was, in the name of the state against the Baltimore & Ohio Railroad Company, to recover certain taxes for the years from 1873 to 1879, both inclusive, to be distributed to the county of Jefferson ; and, the court having sustained a motion to quash the notice and dismiss the motion, the state appeals.

The briefs of counsel are able and exhaustive, and upon them an elaborate discussion might be made ; but, in view of former decisions of this Court, I regard this unnecessary. The controlling question is, can the state maintain any suit for these taxes, or must it confine itself to the means of collection pointed out by statute? The following opinion of Judge Paul in the Circuit Court will, I think, fairly present the legal questions involved :

"Section 67 of chapter 29 of the Code provides that taxes and levies charged against railroad companies, if not paid to the auditor within a time specified therein, shall be certified to the sheriffs of the different counties through which the road passes, for collection, in the same manner as other taxes and levies are collected by them ; that is to say, in the manner prescribed by chapter 30 of the Code, which never included a suit, action or motion. Under these circumstances, it seems to me that the decisions of the Supreme Court of Appeals of this State in *Board of Education, etc.* v. *Old Dominion, etc., Manuf'g Co.,* 18 W. Va. 441, and *Hinchman* v. *Morris,* 29 W. Va. 673 (2 S. E. 863) are absolutely conclusive against the right of plaintiff to institute any of the proceedings in question. In the former of these cases it was held : 'The levying of a tax is a matter solely of statutory creation, and, if specific means for its collect-

ion are prescribed in the statute law, no other means can be resorted to to coerce the payment'—and in the latter: 'The levying and collection of a tax, whether state or county, is a matter solely of statutory creation. Such taxes are not debts, and unless they are expressly or by plain implication authorized to be assigned, legally or equitably, they are incapable of assignment; and no one can be subrogated to the rights and remedies of the state.' Counsel for the plaintiff, however, insists that these decisions do not apply to the proceedings under consideration for the following reasons:

"(1) That since the Code of 1868 took effect the property of railroad companies in West Virginia has been assessed upon the plan provided in section 67 of chapter 29 of that Code—a plan differing widely from the methods upon which every other taxable subject has been assessed, and which depends upon the theory that a railroad is to be considered and treated as an entirety. And he mentions several points of difference between this method and the ordinary methods of assessing property. But, before considering these points of difference, with respect to the method itself, it may be observed: (a) That it did not originate with the legislature of West Virginia. In *Norfolk & W. R. Co.* v. *Supervisors of Smith Co.* 87 Va. 526 (12 S. E. 1009) it is said: 'Prior to the adoption of the present constitution of Virginia, no authority was ever conferred by law, either constitutional or statutory, upon the several counties, to levy taxes upon the property of railroad companies within their limits. The uniform policy of the legislature has been to treat a railroad as an entirety, to be taxed as such, and has been opposed to fragmentary assessments and levies by the counties, respectively; and for the obvious reason that any such mode of assessment and levy would be necessarily destructive of the cardinal principle of equality and uniformity of taxation prescribed by the constitution.' The principle of equality and uniformity of taxation has always been retained in the constitution of this state. See Article X, s. 1. And (b) that this method never included the collection of taxes assessed against a railroad company, unless they were voluntarily paid by the company; other-

wise, both in this state and in Virginia, they were collected by the sheriffs, or other collecting officers, of the different counties through which the road passed. See Code 1860, c. 35, s. 59; Acts W. Va. 1863, c. 118, s. 54; and Code W. Va. c. 29, s. 67. Now, as to the points of difference, it is urged (points 1 and 3) that the payment of taxes by a railroad company directly to the state is not only permitted, but required, by section 67 of chapter 29 of the Code, that section providing that 'it shall be the duty of such corporation or company so assessed and charged, to pay the whole amount of such taxes and levies upon its property, into the treasury of the state, by the twentieth day of January next after the assessment thereof, subject to a deduction of two and a half *per centum* upon the whole sum, if the same be paid on or before that day'; that by this provision a railroad company is placed in a different situation from every other taxpayer; that no other taxpayer can in the first instance pay his tax into the state treasury; that a railroad company not only can do so, but the law makes it its duty to do so ; and that, by reason of this obligation, taxes assessed against a railroad company are claims due the state, within the meaning of sections 1, 2, and 3 of chapter 35 of the Code, which expressly authorizes suits to be brought by the state. The provision in question imposes upon a railroad company no greater obligation to pay its taxes than Article XIII, s. 6, of the constitution of this state imposes upon every land owner to pay his. This article provides : 'It shall be the duty of every land owner to have it entered on the land books in the county in which it, or a part of it, is situated, and to cause himself to be charged with the taxes thereon and to pay the same.' The sole object of these provisions was, manifestly, not to change the nature or character of the tax, but to enable the auditor, in the one case, to add ten *per centum* to the amount thereof, as provided in the same section, to pay the expenses of its collection by the sheriffs, and to enable the state, in the other case, to declare a forfeiture of the land, in the manner provided for in section 6, because no penalty can be imposed on a taxpayer for the non-payment of his taxes, in the absence of some default of duty on his part in not paying

them sooner.   *County of Redwood* v. *Winona & St. P. Land Co.*, 40 Minn. 512 (41 N. W. 465, and 42 N. W. 473).   Again, if taxes, in their essential characteristics, are not debts (*Hinchman* v. *Morris*, 29 W. Va. 684 (2 S. E. 863) but forced contributions for the support of the body politic (5 Am. & Eng. Enc. Law, 149, note) no mere act of legislature, like the one under consideration can change these characteristics.   Nor should such an act, in the absence of a provision, express or implied, to that effect, be construed as placing taxes in the category of debts, so as to admit of their collection by suit.   The second point of difference between the method of assessing railroad companies with taxes, and the ordinary methods, mentioned by counsel, is that the statutory remedies applicable to the real estate of other taxpayers are not applicable to the real estate of railroad companies, as there could not well be any provision for returning the railroad property delinquent for the non-payment of taxes.   The taxes might be paid in one county; they might be unpaid in another; and if the property of the railroad company in the latter county could be returned delinquent, and sold, the unity of the railroad would be destroyed, and the policy of the state, in regarding a railroad as an entirety, would be disturbed.   As before pointed out, the policy of the state, in regarding a railroad as an entirety, never included the forced collection of taxes assessed on the property of such company.   It may be true that under the present method of assessing railroad companies, there could not well be any provision for returning the real estate of such companies delinquent for the non-payment of taxes.   Nor is it believed, for the reasons hereinafter stated, that it is now, or ever has been, the policy of this state to require such real estate, when used or occupied by the company for purposes immediately connected with its road, to be returned delinquent, or to permit a sale thereof for the non-payment of taxes.

"(2) The record does not disclose the ground on which the action of this court in overruling defendant's motion to remove these cases to the Circuit Court of the United State was based, or that of the latter court, in remanding them to this court.   But I am unable to see how the ques-

tion of the state's right to institute these proceedings could be finally determined upon a motion to remove or remand.

"(3) The defendant, by its acceptance of the acts of the general assembly of Virginia passed March 28th, 1837, and March 6th, 1847, may have agreed that its stock, property, and profits within that commonwealth 'should be subject to general taxation in like manner and on the same footing with other similar companies within' that state. But that agreement, it seems to me, should not be construed as giving the state a right of action against the defendant for taxes assessed thereunder, when it possessed no such right with respect to taxes assessed against 'other similar companies.'

"(4) It is urged that these are proceedings by the state itself, and not by county officers—mere agents—as were the proceedings in the two West Virginia cases before cited; and counsel quotes from the opinion of Mr. Justice Strong in *Savings Bank* v. *U. S.*, 19 Wall. 238, who, after stating that the reason of the common-law rule that where a statute creates a right, and provides a particular remedy for its enforcement, the remedy is generally exclusive of all common law remedies, was that the statute, by providing a particular remedy, manifests an intention to prohibit other remedies, and that the rule therefore rested upon a presumed statutory prohibition, says : 'But by the internal revenue law the United States are not prohibited from adopting any remedies for the recovery of a debt due to them which are not known to the laws of Pennsylvania. The prohibitions, if any, either express or implied, contained in the enactment of 1866, are for others, not for the government. They may be obligatory upon tax collectors. They may prevent any suit at law by such officers or agents, but they are not rules for the conduct of the state. It is a familiar principle that the king is not bound by any act of parliament, unless he be named therein by special and particular words', *etc.* That decision, however, was based upon the theory that the tax sued for was a debt due the government. It therefore belongs to that class of decisions which the Supreme Court of Appeals of this state refused to follow, because they were against both reason and the

decided weight of authority. *Hinchman* v. *Morris*, 29 W.
Va. 684 (2 S. E. 863). See, also, upon this subject, *State* v.
*Piazza*, 66 Miss. 426, 430 (6 South. 316) where the court
says: 'We recognize the rule that laws are intended pri-
marily for the government of individuals, and not for the
state, and that the state is not bound by statute, unless it
is expressly named therein, or is included by necessary im-
plication. The English precedents on the subject are based
on the old feudal ideas of royal dignity and prerogative,
and have been adopted to some extent in this country. But
there is no good reason for exempting the state, merely be-
cause it is the state, from the operation of general rules of
law, or the fair interpretation of language. Sedg. St. Const.
Law, 28, 107. Confidence in the view is not shaken by the
unqualified dicta on the subject in *City of Dubuque* v. *Illi-
nois Cent. R. Co.*, 39 Iowa, 56, and in *Savings Bank* v. *U. S.*,
19 Wall. 227.' Besides, in *Railway Co.* v. *Miller*, 19 W. Va.
417, JUDGE JOHNSON, in delivering the opinion of the Court,
says: 'In this case the auditor, under the statutes, was pro-
ceeding in the exercise of a purely ministerial duty. There
was nothing whatever left to his discretion. The law re-
quired him, after the assessment against the railroad cor-
poration had been made, to notify it, through its officers, of
the amount to be paid, and, if it was not paid within a time
specified in the law, to add ten *per cent.* to the amount, and
certify the taxes down to the proper officers for collection
in the counties through which the road passed.' If, then,
the statute leaves nothing whatever to the discretion of the
auditor, but requires him, if the taxes are not paid within
the time specified therein, to certify them down to the
proper officers for collection in the counties through which
the road passes, he can not, instead of certifying them,
either himself bring suit for their collection, in the name of
the state, or permit any one else to do so.

"(5) It is claimed that the statute (Code, c. 31, s. 1; *Id.* c.
45, s. 50; *Id.* 49, s. 6) gives a lien on all the real estate of a
railroad company for state, county, school, and district
taxes assessed thereon, but provided no remedy for its en-
forcement, and that in such a case equity will enforce the
lien. It is believed, however, that neither the statute cited,

nor any other statute, gives a lien on any real estate owned by a railroad company, for the taxes assessed thereon, except only such as is used or occupied by the company for purposes not immediately connected with its road, or is rented or occupied for any purpose to or by individuals. Code, c. 29, s. 67. And this belief is based upon the following considerations : (a) The legislature would not likely give such a lien without providing means for its enforcement, and it has not provided any. In other words, no lien on real estate for taxes can be enforced under the statute, even by the state, unless such real estate has first been returned delinquent. *Hinchman* v. *Morris*, 29 W. Va. 689 (2 S. E. 863). And the legislature has providd no way in which real estate owned by a railroad company, if used or occupied by the company for purposes immediately connected with its road, can be returned delinquent. (b) There is no necessity for such a lien, as the time will never come, doubtless, in the history of any railroad company, when its personal property will not afford ample security for the payment of any and all taxes that may be assessed against the company. Besides, it has never been the policy of this state to permit the real estate of any tax payer to be sold for the non-payment of the taxes assessed thereon, so long as any personal property can be found liable to distress for such taxes. See chapter 30, section 18, of the Code, where the sheriff or collector, when he returns his list of real estate which is delinquent for the non-payment of taxes, is required to make oath that 'he has used due dilligence to find property within his county liable to distress for said taxes, but has found none.' (c) The Code of 1860 (c. 35, s. 59) and the Acts of the Legislature of West Virginia of 1863 (c. 118, s. 54) in express terms, provided that the sheriff should collect the taxes assessed on the real estate and personal property of a railroad company by selling its personal property, but made no provision for a sale of its realty. And neither the Code of 1868, nor any act of the legislature passed subsequently thereto, has made any material change in this respect. The provision on this subject, as it now stands and has stood since the adoption of the Code of 1868, requires the sheriff to collect such taxes, when they have been cer-

tified to him for collection by the auditor, 'in the same manner as other taxes are collected by him,' which is by distress and garnishment. Code, c. 30, ss. 7, 12.

"(6) The provision inserted in section 67, chapter 29, that 'the right of the state, or of any county, or district, or municipal corporation, to enforce, by suit or otherwise, the collection of taxes or levies, heretofore assessed, or the right to which has heretofore accrued, shall not in any manner be affected or impaired by anything in this chapter contained,' is a mere saving clause, and can have no application to any case in which the right to collect taxes or levies by suit did not previously thereto exist."

The counsel for the state rests its case on the first three sections of chapter 35 of the Code, providing that the auditor shall cause proceedings to be instituted "to enforce payment of money due the state," and providing certain processes, and providing that "the action or motion at law may be against any person indebted or liable in any way whatever to the state." The title of chapter 35 is, "Of the Recovery of Claims Due the State." The briefs elaborately discuss the character of taxes; that is, whether they are debts, claims, or liabilities. For the state, it is conceded they are not debts, but are claims or liabilities, in the eye of said provisions of chapter 35. Concede this, and it still strikes me as not proving that a suit may be brought for taxes; for that chapter has not for its office to say just what claims or liabilities shall be the subject of suit, but supposing the existence of a claim or liability of a character bearing an action, it prescribes how and where the proceeding for its recovery shall take place. Its purpose is to designate in what court, and by what form of procedure, the state shall move, when it has a demand of a kind to warrant any legal procedure. When we have a given demand before us, we look elsewhere to see if it may be made the subject of an action. Looking, then, over the field of our law, we find no law authorizing a suit for taxes until chapter 22, Acts 1887, which gives the state a suit in equity to enforce the lien of taxes on land, but we do find two decisions of this Court deciding in the clearest manner that taxes can not be made the subject of suit for their recovery,

but that the state and its sub-agencies are confined for their enforcement to the modes pointed out by statute. I shall not here repeat, but simply refer to the opinions of JUDGE GREEN in *Board of Education, etc.* v. *Old Dominion, etc. Manuf'g Co.* 18 W. Va. 441, and *Hinchman* v. *Morris*, 29 W. Va. 673 (2 S. E. 863) for the reasoning and many authorities to support that view. Are they wrong? Counsel says they are unfortunate. Shall we now overturn them? True, as JUDGE GREEN stated, there are decisions in some states under which they are wrong, but the great current is in support of them. This Court, on two occasions, years ago, looked at these variant decisions, and chose one line. Why shall we now change and revolutionize? Especially when to do so would run counter to so many decisions.

A recent case in North Carolina [*Commissioners* v. *Murphy*, 107 N. C. 36 (12 S. E. 122)] holds that the mode of collection being given by statute, no suit lies. The case of *Louisville Water Co.* v. *Com.* (Ky.) (12 S. W. 300) decided in 1889, presents this view strongly. It has been held by this Court that a tax is not a "debt," within the legal meaning of the term, and therefore *assumpsit* can not be maintained upon it, as is done in some states where it is regarded as an indebtedness. "It comes upon the citizen *in invitum*, and its payment rests upon the duty he owes to the state in return for the protection extended by it to him. The exercise of the power of taxation is legislative in character, while the collection of taxes, when once authorized by the lawmaking power, is ministerial. The one is legislative, and the other is executive. Neither is a judicial act, and one department of the government should be careful not to encroach upon the domain of another. It is true, the judiciary may be called upon by the legislature to enforce the collection of taxes in a judicial way, but it has not done so in this State, save as to railroads, when suit has been authorized to recover them; and this exceptional case inferentially says that this remedy can not be resorted to in other cases. The collection of taxes depends, and properly so, upon the remedies afforded by statute." This is most pertinent and appropriate to the case at bar. We have seen that our Court of Appeals (*Board of Education, etc.* v. *Old*

*Dominion, etc. Manuf'g Co.* 18 W. Va., 441) has settled that taxes are not debts; that the specific mode prescribed for their collection by statute must be pursued. And when the legislature in 1887, for the first time in the history of this state, expressly authorized (Code, c. 31, s. 1) a suit in equity to enforce the lien for taxes on real estate, does not "this exceptional case," in the words of the Kentucky court of appeals, "inferentially say that this remedy (by suit or action) can not be resorted to in other cases?"

The Court of Appeals of Kentucky, in the case referred to, adds, in relation to the subject of taxes: "Their speedy and prompt collection is necessary to the life of the state. The interest of the citizen demands that it should be done with as little expense as possible. If resort can be had to the courts, in the absence of statutory provision, then delay, expense, and abuse will certainly follow. But then it may be said that it is only in cases where there is no remedy, or it is ineffectual, that the right to sue for taxes should be implied. We are aware that it has been held by some courts, and said by some text writers, that if no specific remedy be given by statute, or only an imperfect or inadequate one, then it is but reasonable to infer that a remedy by suit was intended by the legislature. This Court has, however, never assented to such a rule. Public policy, in our opinion, forbids it. Its adoption would burden the courts with litigation, and be likely to lead to abuse of such a character as not only to unjustly harass the citizen, but injure the state greatly more than it would suffer by the loss of taxes from its non-adoption. It would tend to confuse the powers of the different departments of the government, and there would be no limit to its exercise. If one delinquent could be sued because he had made a fraudulent transfer of his property, or another for some other reason, upon the ground that there is no remedy, or adequate one, the state, in the end, would be the sufferer. Besides, it would violate a policy which has prevailed in this State from its earliest history. It is true, it has been said by this Court, in some cases, that wherever a legal liability exists the law raises a promise and *assumpsit* lies; that if a right be created, and no remedy appointed, the usual remedy for that

class of cases will be appropriate; that when the statute creates a liability, and provides no specific remedy, the common law must afford it; and that when the chancellor finds a party with a legal right, but no remedy, he should furnish it. This is all true, generally speaking, and a review of the cases shows that they were general expressions, used in the argument contained in the opinions, and where questions unlike this one were presented." The same proposition was reaffirmed in the case of *Turnpike Com'rs* v. *Louisville & N. R. Co.* (Ky.) (1 S. W. 671) where it said that, "where a suit for a tax is not authorized by law, it can not be maintained." So in Louisiana—that taxes can be collected only in the mode prescribed by the statute. *Mayor, etc.* v. *Heymann*, 35 La. Ann. 301; *Mayor, etc.* v. *Williams, Id.* 329. In *Alexander* v. *Helber*, 35 Mo. 334, so strongly enforced was the rule that collection of taxes can only be by the mode fixed by statute that where an act gave an action for them the right to levy was denied. Cooley on Taxation holds same doctrine, on page 435.

It seems to be a general rule that, when a statute at the same time creates a liability and gives a remedy, that remedy is exclusive. End. Interp. St. § 465.

As mentioned above, the very fact that never, until 1887, did the legislature give a suit for taxes, is quite strong to show that no suit lies; and this is stronger when we reflect that *Board of Education, etc.* v. *Old Dominion, etc. Manuf'g Co.*, was decided in 1881; and, though session after session of the legislature was held, no action was given, except in one instance, to enforce a lien on land— showing that it was not intended to grant it further. The lawmakers did not overlook the subject, for in 1887 they considered it.

Distress was the remedy in this state and had been in the old state, from its foundation. The legislature of the old state did not give the remedy by suit. Its courts did not recognize such suits. Strange, if it existed, that the long lapse of judicial history does not show it. The Virginia cases cited do not sustain it. *Lipscomb* v. *Littlepage's Adm'r*, 1 Hen. & M. 468, was a case where a party had promised the Sheriff to pay, if indulged. *Mayo* v. *Carring-*

*ton,* 19 Grat. 103, was a case where taxes paid were deducted by a tenant out of rent by agreement. *Miller* v. *Com.,* 27 Grat. 110 was a suit to recover a tax on collateral inheritance; but note that the question was submitted to the courts by agreement; and the case is against the idea of a right to suit, in that the parties agreed to make the mattter cognizable in court, implying that otherwise it would not be. The syllabus contains not a word on the point here involved. The point was not raised or considered, but waived.

The absence of remedies in the courts in the two states, through all their history, is easily explained. The remedies given by statute were better, more speedy, and efficacious. These were, sale of land for its taxes, and distress of personalty, without exemption. Why fill the courts with suits, burden the state with endless delays of litigation and burden the citizen with costs? If a railroad company defaults in payment of taxes, every wheel upon its tracks may be stayed, every particle of its movable property be taken, and its power to earn revenue taken away. What more drastic remedy can the wit of man devise? It is urged that the statute commands the railroad to pay, and this begets an obligation, and therefore action lies. Grant there is obligation, and it can be enforced; but the same statute points out the means of enforcement, and excludes a suit.

An assignment of error alleges that it was error to dismiss the motion absolutely, and that a clause of "without prejudice" should have been inserted. This is not contended for in the brief, and seems to be waived. If the case made by the plaintiff's pleading show no cause of action, and the plaintiff do not or can not amend, the dismissal ought to be absolute. The suggestion in the petition would require a saving clause in every case, and would keep open litigation forever. The notice and motion showing no ground of action, it would not bar another suit, if there could be one, giving other facts making good cause of action. Where no cause of action is shown, it is improper to insert a saving clause, and would be ground of reversal because it takes from the party what he is entitled to—final-

ity of decision, operating as *res judicata* in his favor. *Parsons* v. *Riley*, 33 W. Va. 464 (10 S. E. 806); opinion [in *Wanzer* v. *Self*, 30 Ohio St. 378; 2 Black, Judgm. § 721. If it is omitted when the case calls for it, it is error. 2 Black, Judgm. §§ 720, 721; opinion, *Durant* v. *Essex Co.* 7 Wall. 107. Where there is no jurisdiction, or where the action is at law when it should be in equity, or *vice versa*, it seems not necessary, as the judgment or decree is no bar to a suit in the proper court. 2 Black, Judgm. §§ 713, 720; *Pendleton* v. *Dalton*, 92 N. C. 185; *Cramer* v. *Moore*, 36 Ohio St. 347.

Judgment affirmed.