## GODFREY L. CABOT, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91665. Promulgated July 28, 1939.

*Fred C. Fernald*, Esq., and *Warren F. Rideout*, Esq., for the petitioner.

*L. S. Pendleton*, Esq., for the respondent.

368

## OPINION.

Van Fossan: The instant question is that of tax accrual. The statute allows, with certain exceptions, deductions of tax paid or accrued within the taxable year. The petitioner concedes that, if and when a lien attaches to property for the taxes assessed thereon, the date of such lien is the date of the accrual of the taxes, but contends that in the present case, since no such lien accrued on the property in question and since it made its return according to scientific accounting principles and pursuant to the requirement of the Public Service Commission of West Virginia by charging against income earned during the taxable period the expense incurred in producing such income, the deduction was accordingly proper.

The respondent's position is that the taxes in question accrued on January 1, 1933, because the ownership of property on that date is the event upon which tax liability depends and because, so he contends, a lien for such taxes attached on that date.

The question whether or not a lien for the taxes attached to the property will be discussed first. The statute under which this prop-

erty was assessed is chapter 11, article 6, section 1, of the Code of West Virginia, 1931.[1]  Section 5[2] of the same article and chapter

[1] *Public Service Corporations; Returns of Property to Board of Public Works.*—On or before the first day of April in each year a return in writing to the board of public works shall be delivered to the tax commissioner by the owner or operator of every railroad, wholly or in part within this State; by the owner or operator of every railroad bridge upon which a separate toll or fare is charged; by the owner or operator of every car or line of cars used upon any railroad within the State for transportation or accommodation of freight or passengers, other than such owners or operators as may own or operate a railroad within the State; by the owner or operator of every express company or express line, wholly or in part within this State, used for the transportation by steam or otherwise of freight and other articles of commerce; by the owner or operator of every pipe line, wholly or in part within this State, used for the transportation of oil or gas or water, whether such oil or gas or water be owned by such owner or operator or not. or for the transmission of electrical or other power, or the transmission of steam or heat and power or of articles by pneumatic or other power; and by the owner or operator of every telegraph or telephone line, wholly or in part within this State, except private lines not operated for compensation; and by the owner and operator of every gas company and electric lighting company furnishing gas or electricity for lighting, heating or power purposes; and hydro-electric companies for the generation and transmission of light, heat or power: water companies furnishing or distributing water, and all other public service corporations or persons engaged in public service business whose property is located wholly or in part within this State. * * * The return required by this section of every such owner or operator shall cover the year ending on the thirty-first day of December, next preceding, and shall be made on forms prescribed by the board of public works, which board is hereby invested with full power and authority and it is hereby made its duty to prescribe such forms as will require from any owner or operator herein mentioned such information, as in the judgment of the board, may be of use to it in determining the true and actual value of the properties of such owners or operators. And the board of public works shall give due consideration to any return filed in compliance with this section, but any such return shall not necessarily constitute the sole base for assessment purposes, it being the intention of this article that the board's rights, duties, methods and sources of information as regards returns to be filed hereunder or as regards any additional information or as regards the ascertainment of the value of or the assessment of any property shall be limited only by the provisions contained in the whole of this chapter. * * *

[2] *Pipe Line Companies.*—In the case of a pipe line, such return shall show for each owner or operator: (a) The number of miles of pipe line owned, leased or operated within this State, the size or sizes of the pipe composing such line, and the material of which such pipe is made; (b) if such pipe line be partly within and partly without this State, the whole number of miles thereof within this State and the whole number of miles without this State, including all branches and connecting lines in and out of the State: (c) the length, size and true and actual value of such pipe line in each county of this State, including in such valuation the main line, branches and the connecting lines, and stating the different values of the pipe separately; (d) its pumping stations, machine and repair shops and machinery therein, tanks, storage tanks and all other buildings, structures and appendages connected or used therewith, together with all real estate, other than its pipe line, owned or used by it in connection with its pipe line, including telegraph and telephone lines, and the true and actual value of all such buildings, structures, machinery and appendages and of each parcel of such real estate, including such telegraph and telephone lines, and the true and actual value thereof in each county in this State in which it is located; and the number and value of all tank cars, tanks, barges, boats and barrels; (e) its personal property of every kind whatsoever, including money. credits and investments, and the amount thereof wholly held or used in this State, showing the amount and value thereof in each county; (f) an itemized list of all other real property within this State, with the location thereof; (g) the actual capital employed in the business of such owner or operator, the total amount of the bonded indebtedness of such owner or operator with respect to such line, and of indebtedness not bonded; and, if such owner or operator be a corporation, its capital stock, the character, number and amount and the market value of the shares thereof, and the amount of capital stock actually paid in; its bonded indebtedness and its indebtedness not bonded. The board of public works shall have the right to require such owner or operator to furnish such other and further information as, in the judgment of the board, may be of use in determining the true and actual value of the property to be assessed to such owner or operator. * * *

## 372

relates to pipe line companies. Section 18 [3] thereof governs the payment of the assessment. Section 23 [4] provides for the collection of taxes by suit, and section 24 [5] distinguishes real estate used for purposes connected with the property from that not so used. Minor amendments, having no bearing on the issue, were enacted later.

Article 6 applies to the assessment of public service corporations. In that article there is no provision which imposes a lien on the petitioner's property for the taxes assessed thereunder. However, the respondent relies on the general provisions of chapter 11, article 10, section 1, which states in part:

There shall be a lien on all real estate for the taxes assessed thereon, from the day fixed by law for the commencement of the assessment of such taxes, in each year, and the interest upon such taxes, at the rate and for the period provided by law. After the expiration of two years from the last named day, the auditor may institute a suit in equity, in the name of the State, to enforce the lien before mentioned, for any taxes unpaid, or for which no sale for taxes has been made. Such suit shall be brought and prosecuted in the circuit court of

---

[3] *Payment of Assessment by Owner or Operator.*—The auditor shall, as soon as possible after such assessment is completed, make out and transmit by mail or otherwise, to such owner or operator, a statement of all taxes and levies so charged, and it shall be the duty of such owner or operator, so assessed and charged, to pay the whole amount of such taxes and levies into the treasury of the State by the twentieth day of January next after the assessment thereof, subject to a deduction of two and one-half per cent upon the whole sum, if the same be paid on or before that day. If such owner or operator fail to pay such taxes and levies by the said twentieth day of January, the auditor shall add ten per cent to the amount thereof to pay the expense of collecting the same, and shall certify to the sheriff of each county the amount of such taxes and levies assessed within his county; and it shall be the duty of every sheriff to collect and account for such taxes and levies in the same manner as other taxes are levied or collected and accounted for by him. The payment of such taxes and levies by any such owner or operator shall not prejudice or affect the right of such owner or operator to obtain relief against the assessment or valuation of its property in proceedings now pending or hereafter brought under the provisions of section twelve of this article, or in any suit, action or proceeding in which such relief may be obtainable; and if under the provision of said section twelve (§738) or in any suit, action or proceeding, it be ascertained that the assessment or valuation of the property of such owner or operator is too high and the same is accordingly corrected, it shall be the duty of the auditor of the State to issue to the owner or operator a certificate showing the amount of taxes and levies which have been overpaid, and such certificate shall be receivable thereafter for the amount of such overpayment in payment of any taxes and levies assessed against the property of such owner or operator, its successors or assigns. It shall likewise be the duty of said auditor to certify to the county courts, school districts and municipalities, the amounts of the respective overpayments distributable to such counties, school districts and municipalities. * * *

[4] *Collection by Suit of Taxes against Public Service Corporations.*—The taxes and levies assessed against any such owner or operator shall constitute a debt to the State or county, district or municipal corporation entitled thereto, and may be collected by action of assumpsit or other appropriate judicial proceedings, which remedy shall be in addition to all other existing remedies. The right of the State or of any county or district, or municipal corporation, to enforce by suit or otherwise the collection of taxes or levies heretofore assessed, or the right to which has heretofore accrued, shall not in any manner be affected or impaired by anything in this chapter contained. * * *

[5] *Assessment of Buildings and Real Estate of Public Service Corporations.*—All buildings and real estate owned or held by such owner or operator, and used or occupied for any purpose immediately connected with the property, shall be included in such assessment by the board of public works; but all real estate owned or held by any such owner or operator, and not used or occupied for purposes immediately connected with the property, shall be assessed as otherwise provided in this chapter. * * *

the county in which the real estate, or the greater part thereof, is situated, or in which it has been theretofore assessed for taxes, and in such suit the land on which the taxes were assessed may be sold, and all taxes thereon, to the day of sale, with the interest accrued thereon, paid from the proceeds of sale. * * *

Chapter 11, article 10, section 1, is the immediate successor of similar provisions in prior acts of the West Virginia Legislature, extending back to the Code of 1868. Chapter 31, section 1 of that code recites that "there shall be a lien on all real estate from April 1,* * *."

In *State* v. *Baltimore & Ohio Railroad Co.*, 41 W. Va. 81; 23 S. E. 677, decided in 1895, the Supreme Court of West Virginia had before it the same question as applied to railroad companies. There the court said:

* * * It is believed, however, that neither the statute cited, nor any other statute, gives a lien on any real estate owned by a railroad company, for the taxes assessed thereon, except only such as is used or occupied by the company for purposes not immediately connected with its road, or is rented or occupied for any purpose to or by individuals. Code, c. 29, § 67. * * *

The petitioner points out that all of its property was assessed as an entirety and not by the statutory methods controlling the assessment of property as ordinarily held by its owner. There is no specific segregation of kind or amount. Section 24 makes the distinction clear. All real estate against which a lien might be imposed to insure the collection of tax, would be subject to that lien only on the condition that it was *not* used in connection with the petitioner's property normally devoted to public service purposes.

We are of the opinion that no lien upon the petitioner's property assessed under chapter 11, article 6, was imposed by the statutes of West Virginia. This conclusion is inferentially substantiated by the fact that chapter 21 of the Acts of 1937 [6] specifically created the very lien which the respondent claims already existed. If his theory were correct such legislation would have been wholly superfluous.

Inasmuch as no lien attached to the petitioner's property, we must examine the sequence of tax events to determine when the liability for the tax first was imposed upon it. We find that it was not

---

[6] *Section 23. Lien of Taxes; Notice of; Collection by Suit.*—The amount of taxes and levies assessed under this article shall constitute a debt due the state or county, district or municipal corporation entitled thereto, and shall be a lien on all of the property and assets of the taxpayer within the state. The lien shall attach as of the date fixed by law for the commencement of the assessment year, and shall be prior to all other liens and charges. The auditor shall, between the first and fifteenth day of July of each year, prepare a list of the taxpayers delinquent in the payment of such taxes and levies, setting forth their respective addresses and the amount of state, county, district and municipal taxes due from each, which said list shall be certified by the auditor to the board of public works and filed in the office of the secretary of State. * * *

The attorney general may also enforce the lien created by this section on the real estate of such delinquent taxpayer by instituting a suit, or suits, in equity in the circuit court of Kanawha county, in the name of the state, in which such delinquent taxpayers shall be made defendants. * * *

until October 11, 1932, that the petitioner was notified of an estimated tax liability of $32,000, by the letter of the state auditor. It may be doubtful that such an informal notice constituted an "assessment and charge" as contemplated by chapter 11, article 6, section 16, but the petitioner seems to have accepted it as such and acted accordingly. On February 6, 1933, it received its statutory notice of the correct amount of tax, mailed by the auditor on February 3, 1933. In any event, the dates October 11, 1932, and February 3, 1933, are both within the petitioner's fiscal year.

We find in none of the successive statutory steps taken by the taxing authorities of West Virginia, prior to the notice of October 11, 1932, any definite action of the tax officials which fixes and determines the petitioner's liability to pay the taxes for the year 1932. All events prior to October 11, 1932, were but incidents precedent to establishing that liability and were only parts of a process which accomplished that end. The date of assessment is not automatically the date of accrual. *Minnie M. Coward*, 39 B. T. A. 1158.

The statute requires that the auditors must assess and charge the petitioner's property, not only with the whole amount of its taxes for state and school purposes, if any are levied, but also their whole amount for county purposes, for road and other district purposes other than free school and building purposes (in each magisterial district) and in each municipal corporation for all proper municipal purposes. It is obvious that no such assessment and charge was made before October 11, 1932, and probably not until much later in the petitioner's fiscal year. See *New Orleans Cold Storage & Warehouse Co., Ltd.*, 40 B. T. A. 121. Until that official duty was performed the petitioner could not be charged with the responsibility of paying a tax which up to that time was uncertain, indefinite, and problematic.

In *United States* v. *Anderson*, 269 U. S. 422, the Supreme Court said that the departmental regulation authorizing the use of the accrual method of accounting was in order to enable "taxpayers to keep their books and make their returns according to scientific accounting principles, by charging against income earned during the taxable period, the expenses incurred in and properly attributable to the process of earning income during that period." See *Patrick Cudahy Family Co.*, 36 B. T. A. 1147; affd., 102 Fed. (2d) 930.

The Public Service Commission of West Virginia compelled the petitioner to keep its books of account in accordance with the uniform classification of accounts for natural gas utilities as prescribed by the commission. That classification required the petitioner to credit its account "Taxes Accrued" during each accounting period of one month with taxes accrued during such period. The petitioner complied with the Public Service Commission's order by so accruing the

taxes in question. Petitioner's position here squares with the requirements of the Public Service Commission and with its own books.

In *New Orleans Cold Storage & Warehouse Co., Ltd., supra,* we stated: "The pertinent question here is whether the method of bookkeeping employed by the petitioner correctly reflected the income of the petitioner for 1936 and prior years." In that case we found that the respondent had not questioned the petitioner's method of accounting for prior years and that the taxes accrued on its books correctly reflected its income. So here, for all years since October 1, 1922, the petitioner has made its accruals and its income tax returns exactly as it did for the year before us. We consider its treatment of tax accruals to be good accounting practice, in accord with the regulations and orders of the Public Service Commission of West Virginia and the principles set forth in *United States* v. *Anderson, supra.* We hold that petitioner's books correctly reflected its income for its fiscal year ended September 30, 1933.

*Decision will be entered under Rule 50.*