No. 6.—SAMUEL COOPER and HAMILTON WORSHAM, by their next friend, &c. *vs.* The MAYOR and ALDERMEN of the City of Savannah.

[1.] Free persons of color are not citizens as contemplated by the Constitution and laws of this State.

[2.] A tax imposed by the corporate authorities of the city of Savannah, of one hundred dollars on free persons of color, who may remove from any part of this State, to reside in the city—who have no visible property. must be collected by hiring out such free persons of color, as provided by the Act of 1815, and not by imprisonment of such free persons of color, as declared by the city ordinance. Such ordinance being repugnant to the laws of this State, is void.

This was an application for discharge under a writ of Habeas Corpus, in Chatham county, before his Honor Judge FLEMING.

The fifth section of an ordinance passed by the Mayor and Aldermen of the city of Savannah on the 27th day of August 1839, reads as follows :

" Each free person of color who may remove to this city, to reside herein, from any other part of the State, shall pay to the Treasurer the sum of one hundred dollars, within thirty days from the date of his arrival as aforesaid, which said sum shall be in addition to any poll, or other tax, assessed by this ordinance upon free persons of color, and if the said sum be not paid as aforesaid, the Mayor upon information lodged with him of said default, shall and may issue his warrant, under his hand and seal, directed to the Marshal or any of the City Constables to execute, directing him, or any of them to arrest and commit to the common jail, such free person of color, so in default, and the said free person of color shall be confined therein until the said sum of money is paid, or he or she shall be discharged by order of council, or due course of law."

It was agreed, between counsel, before his Honor Judge Fleming, upon the return of the Habeas Corpus, that the petitioners were arrested by the warrant of the Mayor of Savannah, by virtue of the above section of the ordinance of 1839, and committed on proof of the facts of removal and residence; they appealed to the Mayor and Aldermen in council, who confirmed the action of of the Mayor. And that for default of payment, the petitioners were committed to the common jail.

After argument by counsel, his Honor decided—

" That the question does not arise as to the power of the Mayor and Aldermen under the ordinance, but whether as a corporation, they had a right to pass such an ordinance. For the powers of the Mayor and Aldermen, we must look to the Acts of the Legislature. The 17th Section of the Act of 1825, enacts that the said Mayor and Aldermen shall have power to pass *all* ordinances, rules, and regulations, necessary for the government of slaves and free persons of color, within the city of Savannah, and hamlets thereof. Does this 17th Sect. empower the Mayor and Aldermen to pass the ordinance under which these petitioners are confined? The argument of counsel is, that no power is given to the Mayor and Aldermen to imprison, except by the 12th Sect. for fines, forfeitures and penalties, and that even then the imprisonment is limited to ten days and nights. To this it has been answered, that the 12th Sect. applies only to white persons —that the power over slaves and free persons of color, conferred by the 17th Sect. is unlimited, with the single exception that no ordinance, rule or regulation can be passed, contravening the laws of the State, or the institutions thereof. This answer, to my mind, is satisfactory, and the only question to be determined, is, whether this 17th Section conflicts with any law of the State, or with the Constitution. I have not been able to bring my mind to the belief that it does." After giving his reasons therefor, his honor says: "So far from the ordinance conflicting with the laws of the State, it has carried out the very letter and spirit of those laws." * * * * " An effort has been made to place these petitioners upon the footing of citizens of our State. I have not the patience to attempt an answer to this argument. I simply say, they are not citizens, and God forbid they ever should be. It is true they have rights, and such rights as they have are protected by our laws ; but it is not among those rights to force themselves upon a community, who regard them as equally dangerous to themselves, and destructive of the comfort and happiness of their slave population." * * * " I conclude by saying, as an explanation of the fact that I have not noticed certain points in the argument of counsel, that I have not regarded this hundred dollars as a tax, nor as a forfeiture, but as a municipal regulation, to prevent the increase of free persons of color in our city. As such I deem it equally wise and proper. It is ordered

that the petitioners be remanded to jail." To which decision, counsel for petitioners excepted, and have assigned the same as error.

John W. Owens and McQueen McIntosh for plaintiffs in error.

We hold that His Honor erred in determining that the 17th Section of the Act of 1825 empowered the Mayor and Aldermen to pass the ordinance under which the prisoners are confined.

That Section empowers the Defendants to pass Ordinances, Rules and Regulations for the government of free persons of color. *See Laws of Georgia, Vol. IV,* 465.

The prisoners are confined by virtue of a clause of the general tax ordinance of the city of Savannah, not framed for police regulation, but for the purpose of raising money.

This ordinance is made under the authority conferred by the 7th Section of the Act of 1825. By that Section, the Defendants in error are authorized to raise money in two ways:

1st. By Poll Tax. 2d. By assessment on real and personal estate. *See Vol. IV,* 464.

The hundred dollars demanded from the prisoners, if a tax, is illegally required, as it is expressly declared to be "in addition to the Poll Tax," and is not assessed upon real or personal estate.

If it be a tax, legally imposed, the mode employed for its collection is illegal.

Taxes due to the city of Savannah shall be collected in the same way as those due to the State. *Vol. IV,* 465.

Taxes due to the State by free persons of color are not collected in the manner pointed out by the ordinance. *Prince's Dig.* 859.

But if passed by virtue of the 7th or 17th Section, it is equally illegal, because it contravenes the laws of the State of Georgia.— *See Vol. IV,* 465.

By the Common Law, a corporate body cannot force obedience to its bye-laws by the imprisonment of the offender, nor by forfeiture, unless the power be given expressly. *Clarke's Case,* 5 *Coke,* 64. *Chamberlain of London's Case, Ibid,* 63. *Kirk vs. Norill,* 1, *T. Rep.* 118.

And this power is expressly given by the 12th Section of the Act of 1825 alone, and the Court below decides that Section to

be wholly applicable to white persons. By that Section, the imprisonment is limited to ten days and nights.

His Honor erred in determining that free persons of color are not so far citizens as to entitle them to a residence in the city of Savannah at their pleasure.

In Georgia, free persons of color have constitutional rights.— *State vs. Philpot, Dudley's Rep* .46. *Habeas Corpus will lie in their behalf, Ibid. They may hold real estate, Prince's Dig.* 797, 99. *They are subject to taxation, Ibid,* 859. *They may sue and be sued, Ibid,* 802.

The ordinance is unreasonable, oppressive, and unequal, and void, and his Honor erred in determining otherwise. *Angel and Ames on corporations, top page,* 289, *ch. X, Sec. 5. Commonwealth vs. Worcester,* 3 *Pick.* 462. *Magna Charta, ch. XIV. R. M. Charlton's Rep.* 26. *Prince's Dig.* 810.

If any one of the preceding points be sustained by this Court, his Honor erred in remanding the prisoners to jail.

R. M. Charlton, for Defendants in error.

The points brought up may be classed under two heads. *1st.* That the fifth Section of the ordinance of the Corporation of Savannah is unconstitutional.

*2d.* That it is illegal—being in opposition to the laws of this State.

*1st.* Free persons of color are not citizens, but residents : A citizen is entitled to all the privileges of the State. These persons are not. *Prince,* 794. If citizens, they could represent us in the Legislature, for the constitution does not speak of free *white* citizens. *Ib.* 903.

*2d.* This is neither a tax nor a fine, but a municipal regulation intended to prevent these persons from accumulating in the City, passed under the 17*th* Section of the Act of 1834, giving power " to pass *all* ordinances, &c., for the government of slaves and free persons of color."

If a tax, by the Act of 1815, ( *Prince,* 859,) the collector has a right to levy on and hire out free persons of color, failing or refusing to pay their taxes. Until hired, they must be committed.

*By the Court—*Warner, J., delivering the opinion.

Cooper and Worsham *vs.* The Mayor and Aldermen of Savannah.

[1.] The Court below, did not err in ruling the petitioners were not citizens of this State, as contemplated by the constitution and laws thereof.

*Free persons of color have never been recognized here as citizens; they are not entitled to bear arms, vote for members of the legislature, or to hold any civil office. They have always been considered as in a state of pupilage, and been regarded as our wards, and for that very reason we should be extremely careful to guard and protect all the rights secured to them by our municipal regulations. They have no *political* rights, but they have *personal* rights, one of which is personal liberty. The petitioners complain that they are illegally imprisoned in the common jail of the city of Savannah. It appears from the transcript of the record, that the petitioners were arrested and imprisoned by virtue of a warrant issued from under the hand of the Mayor of the city of Savannah, on the 14th day of October, 1847, for a violation of the *5th* Section of an ordinance passed by the Mayor and Aldermen of the city of Savannah, on the 27th day of August, 1839, which reads as follows: "An ordinance to amend and consolidate the various ordinances of the city of Savannah; for raising a fund for the support of a watch in the city of Savannah, and to prescribe the mode of assessing and collecting taxes in the city of Savannah, and for other purposes connected therewith." "Each free person of color who may remove to this city to reside herein, from any other part of the State, shall pay to the Treasurer the sum of one hundred dollars, within thirty days from the date of his arrival as aforesaid, which said sum shall be in addition to any poll or other tax, assessed by this ordinance upon free persons of color, and if the same be not paid as aforesaid, the Mayor, upon information lodged with him of said default, shall and may issue his warrant under his hand and seal, directed to the Marshal or to any of the city constables to execute, directing him or any of them to arrest and commit to the common jail such free person of color so in default, and the same free person of color, shall be confined therein until the said sum of money is paid, or he or she shall be discharged by order of·council or due course of law."

*Note.—By a joint resolution of the Legislature of Georgia, in 1842,it was *unanimously* Resolved, that free negres are not citizens of the U. S., "and that Georgia will never recognize such citizenship." *Pam. Acts,* 1842, *p.* 182*p.* [Rep.

Cooper and Worsham *vs.* The Mayor and Aldermen of Savannah.

By the 7*th* Section of the Act of 24th Dec. 1825, authorizing the corporation of the city of Savannah to assess taxes, &c. it is provided that such taxes shall be collected by the proper officers, in such manner *as the taxes of the State are collected and enforced.*

The 12*th* Section of the Act provides that where there is neither lands, goods or chattels to be found, out of which to collect the penalties imposed by warrant of distress and sale, then it shall be lawful for a majority of the Mayor and Aldermen, by execution duly issued, to imprison the offender in the common jail of the county of Chatham, not to exceed ten days and nights.— The 17*th* Section of the Act gives to the Mayor and Aldermen full power to pass all ordinances, rules and regulations necessary for the government of slaves and free persons of color within the city of Savannah and hamlets thereof. The 20*th* Section of the Act prohibits the corporation of the city of Savannah, from passing any ordinance, rule or regulation, contravening the laws of this State, or the Constitution thereof. *Dawson's Compilation,* 464–5.

[2.] That the corporate authorities of the city of Savannah have ample power conferred on them by the Legislature, by the 17*th* Section of the act of 1825, to make all such rules and regulations as may be deemed proper for the well-being and safety of the inhabitants of the city, in regard to the conduct and residence of free persons of color within the corporate limits of the city, we do not doubt; but the question presented by the record, and bill of exceptions now before us, is, whether the petitioners are imprisoned for the violation of any rule or ordinance made by the corporation under the 17*th* Section of the Act for that object, or whether they are imprisoned for the *non-payment of a tax,* imposed by the corporate authorities of the city. The right of the city authorities to impose a tax upon free persons of color within the corporate limits of the city, is recognized. But if the ordinance which the petitioners are charged to have violated be a *tax ordinance,* and the offence for which they are imprisoned is the *non-payment* of the tax imposed by such ordinance, then, in our judgment, their imprisonment is illegal. While we admit the right of the corporation to impose and collect the tax specified in the ordinance; yet we deny the right of the corporation to enforce its collection by *imprisonment.*

It is quite apparent, we think, from the face of the act of 1825,

that the taxes authorized to be assessed by the corporate authori-
ties of the city of Savannah, should be collected in the same man-
ner as the taxes of the State are collected, with the exception of
the ten days and nights imprisonment authorized by the 12*th* Sec-
tion of the Act. The 12*th* Section, however, in our judgment,
was intended to apply to free white persons.

By the 9*th* Section of the Act of 1815, it is declared, "In all
cases where free persons of color shall fail or refuse to pay the
taxes charged against them, and shall have no property on which
to levy, the collector may levy on and hire out said free person
of color for such price as will produce the amount due the State."
*Prince's Dig.* 859. The Court below was of the opinion that the
non-payment of the one hundred dollars, for which the petition-
ers were imprisoned, was not a tax, and therefore refused to dis-
charge them.

The object of the ordinance enacted by the Mayor and Alder-
men of the city of Savannah, appears upon its face to be to raise a
fund for the support of a watch in the city, and to prescribe the
mode of assessing and collecting *taxes* in the city of Savannah,
and for other purposes connected therewith.

Indeed, the 5*th* Section of the ordinance declares, each free
person of color who may remove to the city to *reside*, shall pay
to the treasurer the sum of one hundred dollars in *addition* to any
poll or other *tax*, assessed by this ordinance upon free persons of
color.

When we take into consideration the *object* of the ordinance, as
well as the ordinance itself, our minds are irresistibly forced to
the conclusion that the section which imposed the payment of one
hundred dollars on free persons of color removing to the city *to
reside*, from other parts of the State, is a tax, and nothing else but a
tax, and being a tax, its collection cannot be enforced, by the impris-
onment of the petitioners. The mode for collecting the tax is
pointed out by the act of 1815, which provides the petitioners
shall be hired out for the payment of their taxes, and that portion
of the ordinance which declares the petitioners shall be impris-
oned for the non-payment of the one hundred dollars tax imposed,
is repugnant to the laws of the State and void.

It was insisted, however, on the argument, that admitting it was
a tax, the petitioners might be detained in prison until arrange-
ments could be made to hire them out, in accordance with the

provisions of the statute. The answer to that argument is, no *such object* appears on the face of the warrants of commitment which are returned as the cause of their caption and detention. Let the judgment of the court below be reversed, and the petitioners discharged.