BOARD OF EDUCATION OF CABIN CREEK DISTRICT OF
KANAWHA COUNTY

*v.*

OLD DOMINION I. M. & M. COMPANY.

Decided October 29, 1881.

(*PATTON, JUDGE, absent.)

1. The levying of a tax is a matter solely of statutory creation; and if specific means for its collection are prescribed in the statute-law, no other means can be resorted to to coerce the payment.

*Case submitted before JUDGE PATTON came upon the bench.

2. No suit can be brought under our statute-law against a delinquent tax-payer to collect township school-taxes.

3. No suit in equity can be brought to enforce the lien for township-taxes created by the 9th section of chapter 49 of the Code.

Appeal from a decree of the circuit court of the county of Kanawha, rendered on the 25th day of May, 1878, in a cause in said court then pending, wherein the Board of Education of Cabin Creek District of Kanawha county was plaintiff, and the Old Dominion Iron Mining and Manufacturing Company was defendant, allowed upon the petition of the said plaintiff.

Hon. Joseph Smith, judge of the seventh judicial circuit, rendered the decree appealed from.

Green, Judge, furnishes the following statement of the case :

The board of education of Cabin Creek district of Kanawha county in October, 1875, filed its bill in the circuit court of Kanawha county against The Old Dominion Iron, Mining and Manufacturing Company, a corporation under the laws of Virginia before the formation of this state, which was authorized to hold lands within this state. The bill alleged, that it owned six tracts of land located in Cabin Creek township in said county of Kanawha; that the board of education of Cabin Creek township in the manner prescribed by law, stated in detail in the bill, for the support and maintainance of free schools in said township for the years 1867, 1868 and 1869 severally took the proper steps to have assessed, and did have legally assessed, certain taxes named on all the taxable property of the township. The bill shows, that this taxation was legally made, and that the assessments were binding,all the requirements of the statute-law having been strictly followed; that said school-taxes so assessed against said six tracts of land of the defendant for the year 1867 amounted to $52.52, for 1868 to $136.72, and for 1869 to $117.19.

The bill further states, that the Old Dominion Mining and Manufacturing Company was a non-resident corporation without an agent to represent it in this state; that these school-taxes are in arrear and have never been collected by

the collector or his successor, by the sheriff of the county or by any other person, and have never been paid; and that they were never placed in the hands of the sheriff of Kanawha as required by chapter 133, section 1, of the acts of 1871; and that said lands have never been returned delinquent for said township-taxes of 1867, 1868 and 1869; but that the tax-bills were fraudulently withheld by the collector or treasurer; that in addition to these taxes the board of education of Cabin Creek township in 1867 levied a special tax to provide a school-house, as they were authorized to do, and a duplicate of the assessment was delivered to the treasurer. The bill shows, that they legally levied this special tax. This special tax so levied on the said six tracts of land was $33.58; that this tax was never collected by the treasurer or his successor, by the sheriff of the county, by the collector appointed by the board, by his successor or by any other person, and is yet due and unpaid. These school-taxes, the bill alleges, amount in the aggregate to $340.01 with legal interest thereon till paid, and constitute, as the plaintiff is advised, a lien on said lands. The board of education of Cabin Creek district, the plaintiff, the law makes the legal successor of the board of education of Cabin Creek township. The bill prays a writ of attachment against the real estate of the Old Dominion Iron, Mining and Manufacturing Company as a non-resident, and that said lands may be sold to pay plaintiff's claim. The defendant demurred to this bill and pleaded the statute of limitations. The circuit court sustained the demurrer and dismissed the bill at the plaintiff's cost by a final decree entered May 25th, 1878.

From this decree a judge of this court allowed an appeal and *supersedeas.*

*J. S.* and *T. B. Swann* for appellant cited the following authorities: Acts 1877, p. 31; Code, p. 304–305; *Id.* ch. 49, § 9; *Id.* ch. 39, §§ 1, 2; *Id.* ch. 45, § 5; *Id.* ch. 49, § 1; Acts 1863, p. 99, § 13; Acts 1872-3, p. 386; Code, ch. 131, §§ 1, 4; 2 Johns. Chy. 295; Blackwell 164-167; 2 Dillon, § 653; *Id.*, § 655; 1 Gill 499; 15 Ill. 9; 14 Ill. 83; 2 Yerg. 167; 2 Dill. Mun. Corp., 660 and cases cited; Cooley 365-6 (s. p); 18 Johns. 226; 4 Bibb 63; *Statts and Board,* 4 Gratt.; 3 J. J. Marsh. 15; 6 Mon. 492; 3 Metc. 258; 4 Cranch 151;

6 Pet. 470; *Id.* 666; 16 How. 48; 2 Cranch 352; 2 Mass. 311; 2 Hill 60.

*Thomas L. Brown* for appellee cited the following authorities: Acts 1863, ch. 27; *Id.* ch. 89, §§ 8, 11, 13, 18, 19; *Id.* pp. 98-103; *Id.* ch. 130; *Id.* ch. 131; *Id.* ch. 137, § 39; Acts 1865, p. 55; Acts 1867, ch. 98, §§ 46, 47; Acts 1868, ch. 176, p. 244; Code ch. 45, § 47; *Id.* ch. 49, §§ 3, 4; *Id.* ch. 30, §§ 7, 11; *Id.* ch. 49, §§ 6, 9; Acts 1871, ch. 133, p. 177; Cooley on Tax., 324; *Id.* 13; *Id.* 358; Code, ch. 104, § 12; *Id.* ch. 35, § 20; Acts 1872-3, ch. 123, § 7; Acts 1877, p. 31.

Green, Judge, announced the opinion of the Court:

The question involved in this case is, whether an attachment in equity of the lands of a non-resident in this state brought in 1875 to enforce by sale of land the payment of township school-taxes assessed on land in 1867, 1868 and 1869, can be sustained, when the taxes remain unpaid, and no other steps have ever been taken to collect them, and the lands have never been returned delinquent.

A municipal tax in its essential characteristics is not a debt or in the nature of a debt in its mode of collection and enforcement. It is an impost levied by the authority of the government on its subjects for public purposes. It is not founded on contract, but operates *in invitum.* (*City of Camden* v. *Allen,* 2 Dutcher's Rep. 398; *Peirce* v. *The City of Boston,* 3 Metc. (Mass.) 520.) A debt universally bears interest, while a tax never carries interest, except when expressly given by statute. (*Haskel* v. *Bartlett,* 31 Cal. 281.) It follows, that unless the statute expressly or by fair implication authorizes a suit to be brought to collect a tax, it cannot be collected in this manner. (*City of Camden* v. *Allen,* 2 Dutcher 399; *Shaw* v. *Peckett,* 26 Vt. 482.) For like reason a debt is the subject-matter of set-off and is liable to set-off, but a tax is neither; and no right of action exists for taxes except in specified cases, and they do not partake of the nature of judgments and cannot by suit be turned into judgments, unless this be authorized expressly or by fair implication by statute-law. (*Pierce* v. *The City of Boston,* 3 Metc. 520.) So a statute abolishing imprisonment for debt does not prevent imprisonment for the non-payment of taxes. (*Appleton* v. *Hopkins,*

5 Gray 530.) See also *Webster* v. *Seymour & Joslin*, 8 Vt. 135. If the law is silent respecting the method of collecting a municipal tax, the power to collect it by suit would be implied, because necessary to make the express power to tax available. But if a remedy is given, which does not embrace an action at law, a tax cannot be recovered by an action at law. (*Crupo* v. *Stetson*, 8 Metc. (Mass.) 394; *Camden* v. *Allen*, 26 N. J. 398; *Shaw* v. *Peckett et al.*, 26 Vt. 482; *Packard* v. *Tisdale*, 50 Me. 376; *City of Carondelet* v. *Picot*, 38 Mo. 125; *Lane County* v. *Oregon*, 7 Wall. 80; *Durant* v. *Supervisors*, 26 Wend. 66).

It is true, that cases have been decided, where it has been held, that the imposition of a tax created a legal obligation to pay, on which the law raised an *assumpsit*, notwithstanding the statute gave another specific remedy; and on this implied *assumpsit* an action at law would lie, (*Dugan* v. *Baltimore*, 1 Gill & J. 499; *Baltimore* v. *Howard*, 6 Har. & J. 383; *State* v. *Steamship Company*, 13 La. An. 497; *Dunlap* v. *County*, 15 Ill. 9 : *Ryan* v. *County*, 14 Ill. 83); but these decisions are against both reason and the decided weight of authority. It would follow therefore, that taxes are not a lien upon lands, unless made so by express language of the statute or by fair implication from the statutory language. (See *Hine* v. *Levee*, 19 Wall 655; *Philadelphia* v. *Greble*, 38 Pa. St. 339; *Allegheny City's Appeal* 41 Pa. St. 60.)

When a municipal tax is declared to be a lien, and no mode of collection is prescribed by the statute, and no power to collect by sale exists, such lien may be enforced in equity by the municipal corporation instituting the suit, but such a suit to enforce such a lien could not be brought by an assignee of the municipal corporation, for though a lien for a debt may be enforced in equity by an assignee of the debt, yet a tax is not a debt, and the right of the municipality to bring such a suit in equity is a purely statutory right, which must be either expressly given or be given by fair implication, and when given can be exercised only by the municipality and not by its assignee, (*McInerny* v. *Reed*, 23 Ia. 410.) It would seem necessarily to follow, that though a municipal tax was expressly declared by statute to be a lien, yet if a specific mode be provided, whereby the land may be sold to satisfy

such lien, no suit could be brought in a court of equity to enforce such lien; for the foregoing decisions show, that the specific statutory mode of collection must be pursued; and other cases lead to the same conclusion. (See *Cooper* v. *Savannah*, 4 Ga. 68 ; *Alexander* v. *Helber*, 35 Mo. 334.)

The plaintiff therefore in this case can not enforce the payment of these school-taxes, which are unpaid, by this attachment and suit in equity to enforce the lien he claims on the defendant's land, unless the statute-law gives him a right to this mode of enforcement expressly or by fair implication. Taxes for free schools were unknown in Virginia except in a few counties prior to the war. When the state of West Virginia was formed, the people of the state with few exceptions were unused to a free school system. When it was introduced as a general system for the first time, at the time West Virginia was formed, it was natural, that the legislature should for some years make the collection of the township free school taxes as little stringent as possible consistently with the support of free schools. Accordingly until the passage of our Code, which took effect April 1st, 1869, the lands in this state were clearly not intended to be made liable in any manner to the payment of these township school-taxes. The laws before the passage of our Code provided for their collection by distress and by the garnishment of the debtors of the delinquent tax-payers and in no other manner. There is nowhere in our laws any authority to collect them by suit, or anything from which such authority could be implied; nor was there any provision before the passage of our Code, whereby land was in any way made liable to their payment ; nor were they declared liens upon the land. That they were to be collected by distress and garnishment of debtors of the delinquent tax-payer, will appear from the Acts of 1865, page 67, section 39 of chapter 74, passed February 24th, 1865, in connection with chapter 131 of Acts of 1863, page 228, sections 1, 4, 5, 9, 10, 11 and other sections of Acts of 1868, chapter 176, page 244.

It is claimed, that section 13 of chapter 89, page 99 authorized the collection of school-taxes by suit; but it is clear,that it does not. It simply authorizes to be collected by suit all moneys and penalties due a township, that is obviously all

debts due the township ; and taxes are not debts. The Code of West Virginia which went into effect April 1, 1869, for the first time made township school-taxes a lien on land; but at the same time it provided the most efficient mode of enforcing the lien thus created, that is, by sale of the lands by the sheriff, after they had been returned delinquent for the non-payment of taxes, (Code, ch. 49, §§ 6 and 9). Of course, on the principles we have stated, no right to bring any suit to enforce this lien can be implied from this legislation. It is however insisted, that as the lands of the defendant had not been returned delinquent for the township school-taxes of 1867 and 1868, they could not be sold under these provisions of the Code, and therefore the lien given by section 9 of chapter 49 of the Code for the taxes of 1867 and 1868 might be enforced in a court of equity ; there being no other mode of enforcing it. It is obvious, that this section gives no lien on land for the school-taxes of any year prior to the passage of the Code. This section 9 of chapter 49 of the Code is obviously prospective in its operation. There is nothing in the section to give it a retrospective operation so as to apply to the taxes of preceding years. To give it such operation is entirely subversive of every principle of correct interpretation of statutes, especially as its effect would be to subject the lands of innocent purchasers for valuable consideration to liens which had no existence, when they purchased.

The decree of the circuit court sustaining the demurrer to the bill and dismissing the bill at the plaintiff's cost was therefore not erroneous, and must be affirmed with costs against the appellant and $30.00 damages.

Judges Haymond and Johnson Concurred.

Decree Affirmed.