## DRAVO CONTRACTING CO. v. JAMES.
### No. 4654.

Circuit Court of Appeals, Fourth Circuit.
Sept. 6, 1940.

Lawrence D. Blair, of Pittsburgh, Pa., and W. Chapman Revercomb, of Charleston, W. Va. (William S. Moorhead, of Pittsburgh, Pa., and W. Elliott Nefflen, of Charleston, W. Va., on the brief), for appellant and cross-appellee.

Clarence W. Meadows, Atty. Gen. of West Virginia (W. Holt Wooddell, Asst. Atty. Gen. of West Virginia, on the brief), for appellee and cross-appellant.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is the second appeal in a suit instituted to enjoin the collection of taxes and penalties in the sum of $135,761.51 assessed by the Tax Commissioner of West Virginia against the Dravo Contracting Company. The case was first heard before a statutory court of three judges, and the taxes were held void on the ground that they burdened operations of the United States Government. Dravo Contracting Co. v. Fox, D.C., 16 F.Supp. 527. On appeal this decision was reversed by the Supreme Court and the case was remanded for further proceedings. James v. Dravo Contracting Co., 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155, 114 A.L.R. 318. The Supreme Court, in addition to passing upon the question as to burden upon the federal government, considered the question of the territorial jurisdiction of the State of West Virginia to impose the tax and held that the jurisdiction existed except as to certain work done in Pennsylvania and that an apportionment would be necessary as to this. The case was then heard before the District Judge, the special court of three judges no longer being necessary; and, from a decree apportioning gross income for purposes of taxation under the statute in accordance with the cost of work performed in the respective states, both parties have appealed. The commissioner contends that the tax should be assessed upon the entire amount of the payments received by the taxpayer on the

government contracts, less the amounts paid upon delivery or fabrication of materials at Pittsburgh, title to which passed to the government upon such payments. Taxpayer contends that the entire tax is void because no method of apportionment has been provided by statute.

The statute involved is ch. 11, art. 13, West Virginia Code of 1931, as amended May 26, 1933, Acts W.Va.1933, 1st Ex. Sess., c. 33. The applicable provisions thereof are as follows:

"Sec. 2. There is hereby levied and shall be collected annual privilege taxes against the persons, on account of the business and other activities, and in the amounts to be determined by the application of rates against values or gross income, as follows:
* * *

"(e) Upon every person engaging or continuing within this state in the business of contracting, the tax shall be equal to two per cent of the gross income of the business."

Gross income is thus defined in the statute: "'Gross income' means the gross receipts of the taxpayer received as compensation for personal services and the gross receipts of the taxpayer derived from trade, business, commerce or sales and the value proceeding or accruing from the sale of tangible property (real or personal), or service, or both, and all receipts by reason of the investment of the capital of the business engaged in, including interest, discount, rentals, royalties, fees or other emoluments however designated and without any deductions on account of the cost of property sold, the cost of materials used, labor costs, taxes, royalties, interest or discount paid or any other expense whatsoever." Section 1.

Taxpayer is an engineering and contracting corporation existing under the laws of Pennsylvania and having its office and principal place of business as well as its extensive plant at Neville Island near Pittsburgh. During 1933 and 1934, the tax years here in question, it held four contracts with the United States Government for the construction of locks and dams in the Ohio and Kanawha rivers in the state of West Virginia. These contracts provided for the payment of unit prices for the work to be done in the construction of the locks and dams; and, with the exception hereafter noted, progress payments were made upon delivery of materials at

the dam sites or upon incorporation of these materials in the locks or dams. The exception, as pointed out by the Supreme Court (302 U.S. at page 139, 58 S.Ct. 208, 211, 82 L.Ed. 155, 114 A.L.R. 318) was that partial payments were made upon the fabrication of roller gates and certain other equipment at the Pittsburgh plant, the title to which thereupon vested in the government. In the same category, of course, are payments made upon delivery at the Pittsburgh plant. All other payments were made either upon delivery of materials at the dam sites or upon incorporation in structure or erection. It is the contention of the commissioner that the entire income received from the contracts, with the exception of the partial payments made on account of the delivery or fabrication of material at the Pittsburgh plant, was income received as the result of activities taking place in the state of West Virginia, and that this is properly taxable by the state of West Virginia and is taxed by the provision of the statute in question. And in support of the position that no portion of the income should be excluded except that which was received upon delivery or fabrication of materials at the Pittsburgh plant, the commissioner relies upon the following language of the Supreme Court in the former appeal:

"A large part of respondent's work was performed at its plant at Pittsburgh. The stipulation of facts shows that respondent purchased outside the state of West Virginia materials used in the manufacture of the roller gates, lock gates, cranes, substructure racks and spur rims, structural steel, patterns, hoisting mechanism and equipment, under each of its contracts, and fabricated the same at its Pittsburgh plant. The roller gates and the appurtenant equipment were preassembled at respondent's shops at Pittsburgh, and were there inspected and tested by officers of the United States government. The materials and equipment fabricated at Pittsburgh were there stored until time for delivery, and the appropriate units as prepared for shipment were then transported by respondent to the designated sites in West Virginia and there installed. The United States knew at the time the contracts were made that the above-described work was to be performed at the plaintiff's main plant. The contracts provided for partial payments as the work progressed, and that all the material and work covered by the

partial payments should thereupon become 'the sole property of the government.' Payments by the government were made from time to time accordingly.

"It is clear that West Virginia had no jurisdiction to lay a tax upon respondent with respect to this work done in Pennsylvania. As to the material and equipment there fabricated, the business and activities of respondent in West Virginia consisted of the installation at the respective sites within that state, and an apportionment would in any event be necessary to limit the tax accordingly. Hans Rees' Sons v. North Carolina [283 U.S. 123, 51 S.Ct. 385, 75 L.Ed. 879], supra."

The contention of the taxpayer is that the State of West Virginia may not tax activities under the contract not taking place in West Virginia; and that, in addition to the fabrication of parts at the Pittsburgh plant upon which partial payments were made, it did much work there in preparing structural steel and other materials for incorporation in the locks and dams. A stipulation as to the costs incurred at the plant and at the work sites was entered into; and the judge below made an apportionment of income based upon this stipulation. Taxpayer contends, however, that the court is without power to apportion income for the purpose of taxation on the basis of relative costs, as no such apportionment is provided for in the statute, and that, in the absence of such provision, the effect of the fact that taxpayer earns the income from the contracts by activities occurring without the state as well as within it, is to invalidate the tax as applied to such income.

■ We agree with taxpayer that the court was without power to apportion its income on the basis of the cost of the activities involved in earning the income within and without the state. No such basis of apportionment is prescribed by statute; and, in the absence of statute, the court is without power to adopt it, as this is a legislative function involved in the imposition of the tax, and, therefore, not one which courts may exercise. 61 C.J. .1583. Commonwealth v. P. Lorillard Co., 129 Va. 74, 105 S.E. 683. Porto Rico Mercantile Co. v. Gallardo, 1 Cir., 6 F.2d 526. Mackin v. Taylor County Court, 38 W.Va. 338, 18 S.E. 632. In cases where the tax imposed is not in its nature divisible and some part thereof is beyond the taxing power of the state and no provision is made for apportionment, the whole tax is void. Gwin, White & Prince, Inc., v. Henneford, 305 U.S. 434, 59 S.Ct. 325, 83 L. Ed. 272. Adams Mfg. Co. v. Storen, 304 U.S. 307, 58 S.Ct. 913, 82 L.Ed. 1365, 117 A.L.R. 429. Bowman v. Continental Oil Co., 256 U.S. 642, 41 S.Ct. 606, 65 L.Ed. 1139. As said by Mr. Justice Holmes in Meyer, Auditor of the State of Oklahoma v. Wells, Fargo & Co., 223 U.S. 298, 302, 32 S.Ct. 218, 220, 56 L.Ed. 445, "Neither the court below nor this court can reshape the statute simply because it embraces elements that it might have reached if it had been drawn with a different measure and intent." If, therefore, any such apportionment as was made by the court below were necessary to separate the portion of the income which the state has jurisdiction to tax from the remainder, the tax would unquestionably be void in its entirety. The fact that the Supreme Court sustained the tax, although the point was expressly raised in the record that it was invalid because imposed on income derived partly from out-of-state activities with no provision for apportionment, is conclusive, we think, not only as to its validity, but also as to the fact that no such method of apportionment was contemplated.

■ Since no method of apportionment is provided by the statute, it is clear that the apportionment directed by the Supreme Court means a separation, for purposes of taxation under the statute, of the portion of the income subject to the taxing power of the state. And that this is all that the statute was intended to tax, appears from the fact that the tax is imposed upon "engaging or continuing *within the state* in the business of contracting." (Italics supplied.) The business here involved was contracting for the erection of locks and dams within the state. With the exception of the deliveries and the fabrication at the Pittsburgh plant, for which partial payments were made with passage of title to the government, all of the activities upon which payments were made occurred within the state, and the income derived therefrom was subject to the state's power to tax. Certainly property brought within the state was rendered subject to that power; and no distinction can be drawn between the state's power to tax the property and its power to tax income received upon delivery of the property within the state by the contractor or its incorporation by him in the dams and locks. As said by

the Supreme Court in this case (302 U.S. at page 153, 58 S.Ct. at page 218, 82 L.Ed. 155, 114 A.L.R. 318), "The question of the taxability of a contractor upon the fruits of his services is closely analogous to that of the taxability of the property of the contractor which is used in performing the services." It is well settled that, where income subject to the state's taxing power is separable from that which is not, a tax will be upheld as to the portion which is so subject. Bowman v. Continental Oil Co., 256 U.S. 642, 646, 41 S.Ct. 606, 65 L.Ed. 1139; Ratterman v. Western Union Telegraph Co., 127 U.S. 411, 8 S.Ct. 1127, 32 L.Ed. 229.

Not only is it clear from the language of the Supreme Court first quoted, that its intention was that only those portions of taxpayer's income derived from payments made upon delivery or fabrication at the Pittsburgh plant should be excluded from income in computing the tax, but this is the interpretation placed upon its decision by the Supreme Court itself in the later case of Ford Motor Co. v. Beauchamp, 308 U. S. 331, 60 S.Ct. 273, 276, 84 L.Ed. 304. In that case, which upheld a corporate franchise tax, the court distinguished its prior decision in this case, saying: "James v. Dravo Contracting Company contains nothing contrary to this view. The statute under consideration there levied a privilege tax 'equal to two per cent of the gross income of the business.' In so far as it was *upon receipts in other states for work done in other states,* it was conceded to be outside of the taxing power of the statute." (Italics supplied).

■ It is argued that the tax is invalid under the decision of the Supreme Court in the case of Hans Rees' Sons v. North Carolina, 283 U.S. 123, 51 S.Ct. 385, 75 L. Ed. 879, and that particular importance must be ascribed to that case because cited by the Supreme Court in its opinion in this. The Hans Rees' Sons case was cited, however, merely as supporting the propositions that, unless the activities which are the subject of tax are carried on within the limits of the state, the state is without power to impose the tax, and that, as to the work done in Pennsylvania upon which partial payments had been made, an apportionment would be necessary. It constitutes no authority for the proposition that the state may not impose a tax on the basis of income received from payments made upon deliveries or construction within the state because work may have been done in other states upon the materials prior to their delivery. The holding of the Hans Rees' Sons case is that a state income tax upon a unitary enterprise conducted in several states is void if it allocates an unreasonable portion of the income to the taxing state. The tax here is not upon a unitary enterprise conducted in several states, but upon the business of contracting conducted in West Virginia, and income derived from that business is properly subject to taxation by that state. Only "upon receipts in other states for work done in other states" is the tax not assessable. The fact that the contractor may have prepared materials in other states for use under the contract is immaterial, if they were used in the performance of the contract in West Virginia and payments made the contractor were dependent upon such use.

Pertinent is the language used by the Supreme Court in Ford Motor Co. v. Beauchamp, supra, 308 U.S. at page 334-335, 60 S.Ct. at page 275, 84 L.Ed. 304, where the Court said: "The statute calls the excise a franchise tax. It is obviously payment for the privilege of carrying on business in Texas. There is no question but that the State has the power to make a charge against domestic or foreign corporations for the opportunity to transact this intrastate business. The exploitation by foreign corporations of intrastate opportunities under the protection and encouragement of local government offers a basis for taxation as unrestricted as that for domestic corporations. In laying a local privilege tax, the state sovereignty may place a charge upon that privilege for the protection afforded."

■ In the very recent case of McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 60 S.Ct. 388, 398, 84 L.Ed. 565, a state tax on sales of goods from without the state for consumption within the state was sustained on the ground that deliveries occurred within the state. On the same principle, the state unquestionably may tax the income of a contractor arising upon construction within the state or delivery within the state at the site of the construction; and the fact that the materials may have been fabricated in other states, either by the contractor or by others, cannot affect the state's power. In the case just cited, the court said: "Here the tax is conditioned upon a local activity delivery of

goods within the state upon their purchase for consumption. It is an activity which apart from its effect on the commerce, is subject to the state taxing power. The effect of the tax, even though measured by the sales price, as has been shown, neither discriminates against nor obstructs interstate commerce more than numerous other state taxes which have repeatedly been sustained as involving no prohibited regulation of interstate commerce."

With respect to the power of the state to tax on the basis of transactions occurring within its borders, this case, in its implications, is not unlike South Carolina Power Co. v. South Carolina Tax Commission, D.C., 52 F.2d 515; Id., D.C., 60 F.2d 528, affirmed 288 U.S. 178, 53 S.Ct. 326, 77 L.Ed. 685. In that case a state production tax on electricity was upheld, notwithstanding that the electricity immediately upon its production was carried into other states upon an interstate system of wires, and a sales tax on electricity was upheld, although the electricity was brought into the state upon an interstate system of wires. Just as it was there held that the state may tax what is carried on within its borders, although this may be dependent upon transactions extending beyond them, so also the power to tax income derived from contracting within the state is not affected by the fact that materials for use under the contract may be brought from without the state, or that they may have been prepared by the contractor without the state for use under the contract. Only where income arising from a contract performed within the state accrues upon a separable out-of-state transaction should it be excluded, as not being income arising from contracting within the state.

■ Another question presented by the appeal is whether penalties or interest should be allowed upon the amount of taxes found to be due. We think, however, that the court below was unquestionably right in denying penalties. The assessment was made upon a basis held by the Supreme Court to be erroneous in that it included in the gross income of the taxpayer partial payments made on account of the materials delivered or fabricated at the Pittsburgh plant. No assessment of the correct amount of the tax has even yet been made. Moreover, the tax as assessed was not severable so that taxpayer was given an opportunity of paying the amount properly

due; and no opportunity was given to pay the entire amount and sue for the recovery of the portion illegally assessed. Taxpayer was justified in contesting liability for the taxes as assessed; and until the income to serve as the basis for taxation shall be ascertained and the taxes thereon determined, it would be inequitable to allow penalties for non payment to be collected. United States Trust Co. v. New Mexico, 183 U.S. 535, 544, 22 S.Ct. 172, 46 L.Ed. 315; San Barnadino County v. Southern Pac. R. Co., 118 U.S. 417, 6 S.Ct. 1144, 30 L.Ed. 125; Ritterbusch v. Atchison T. & S. F. R. Co., 8 Cir., 198 F. 46, 53.

■ The question as to the allowance of interest is a more difficult one. It is true that the statutes of West Virginia make no provision for the collection of interest upon delinquent taxes; and it is well settled that in suits for the recovery of such taxes interest is not recoverable unless authorized by statute. Board of Education v. Old Dominion Iron, Min. & Mfg. Co., 18 W.Va. 441; Crabtree v. Madden, 8 Cir., 54 F. 426; Sargent v. Tuttle, 67 Conn. 162, 34 A. 1028, 32 L.R.A. 822; note 16 Ann.Cas. 471. Courts of equity, however, in restraining the collection of the illegal portion of a tax may, in the exercise of their discretion, require the payment of interest on the legal portion, even where there is no statutory provision for payment of interest. Ritterbusch v. Atchison, T. & S. F. R. Co., supra; Ketchum v. Pacific R. Co., Fed.Cas. No. 7,738, 14 Fed.Cas. 418, 423, 424. But in this case it must be remembered that the legality of the entire tax was a matter of grave doubt until the decision of the Supreme Court, wherein its legality was upheld by a divided court. Under that decision the tax as assessed was held invalid and it was pointed out that an apportionment of income would be necessary to determine the correct amount of the tax. The hearing below was an attempt to make the apportionment; and as heretofore indicated an incorrect basis of apportionment was used. In the meantime no action has been taken by the state officials toward assessing the tax on the correct basis, and the amount of the liability of the taxpayer has not been determined. Until the amount of the tax is fixed, so that the taxpayer may know with certainty what amount he is required to pay, we think it would be inequitable to charge him with interest. Particularly is this true in view of the fact that taxpayer has been

furnished no opportunity under the law of paying the tax under protest and suing for the recovery of the illegal portion. See United States Trust Co. v. New Mexico, supra.

For the reasons stated, the decree appealed from will be reversed, and the cause will be remanded for further proceedings not inconsistent herewith. Upon such remand, decree should be entered enjoining the collection of only so much of the taxes as were assessed upon the portion of the income of taxpayer derived from payments made upon deliveries or fabrication at its Pittsburgh plant, but enjoining the collection of all penalties or interest assessed prior to the entry of the decree. The costs in this Court on both appeals will be equally divided between the parties.

Reversed.

SOPER, Circuit Judge, concurs in the result.