In the Matter of UNITED STATES STEEL CORPORATION, Petitioner, v. LAWRENCE E. GEROSA, as Comptroller of the City of New York, Respondent.

First Department, February 21, 1963.

*A. Chauncey Newlin* of counsel (*Francis L. Casey, William L. Hearne* and *Arthur E. Hauser* with him on the brief; *White & Case,* attorneys), for petitioner.

*Solomon Portnow* of counsel (*Stanley Buchsbaum* with him on the brief; *Leo A. Larkin, Corporation Counsel*), for respondent.

BREITEL, J. P. The taxpayer seeks to annul the determination of the Comptroller of the City of New York under which all its receipts from certain lump sum contracts were assessed, without allocation, under the New York City General Business and Financial Tax Law (General City Law, § 24-a *et seq.*; Administrative Code of City of New York, § B46–1.0 *et seq.*; § RR41–1.0 *et seq.*). The tax is imposed upon the privilege of doing business within the city. The taxpayer argues that an assessment of its receipts from the lump sum contracts without allocation is invalid, because " the major part of the work done in carrying them out is performed outside of the City."

The tax years involved are for the privilege periods July 1, 1946 to June 30, 1950. The city has levied a deficiency assessment of $15,310.60, plus penalties and interest of $17,550.01. Taxpayer's gross billings for New York City for the years in question ranged from $1.8 to $10.3 million. The bulk of these receipts were from lump sum contracts, the only contracts which occasioned the present dispute between the taxpayer and the city.

The taxpayer[*] was a New Jersey corporation with steel plants outside the city, one in New York State and others in Pennsylvania, New Jersey, Indiana and Minnesota. In New York City it negotiated contracts that were formally closed in Pennsylvania. Under these contracts taxpayer would purchase raw steel, fabricate it at its various plants into forms required, ship the fabricated steel into the city, and then erect the steel into structural assemblies on site as the frames or members of buildings and bridges. Under typical contracts 80% of the cost represented materials, fabrication, and transportation, before the fabricated steel reached New York City, and the balance of 20% represented the cost of erection or installation.

[*] Actually, the petitioner is the successor to the American Bridge Company which, in the years in question, incurred whatever tax liability is involved. The devolution makes no difference in the description of the facts.

In its petition, taxpayer alleges that it customarily did business under four types of contracts: "(1) Lump sum contracts, under which the Company agreed for a lump sum price to manufacture, deliver and erect structural steel according to the customer's specifications at a specified location; (2) material and service contracts, under which the Company agreed to manufacture, deliver, and erect structural steel according to customer's specifications at a specified location, for prices stated separately for material and erection service; (3) contracts for the sale of material only; and (4) contracts for erection services only." Under the second class of contracts, material and service contracts, the city allows the taxpayer to allocate according to formula, which is not in dispute. Allocation is a mathematical process by which privilege taxes imposed on mixed interstate-intrastate business are limited to place the tax burden on so much of the business as is separably intrastate (see, e.g., *Matter of McCall Corp.* v. *Joseph,* 284 App. Div. 484, 2 A D 2d 358; cf. *Matter of New Yorker Mag.* v. *Gerosa,* 3 N Y 2d 362, appeal dismissed 356 U. S. 339). Taxpayer would like similar treatment for the first class of contracts, lump sum contracts.

The taxpayer concedes the vulnerability to tax of the 20% of the receipts derived from erection, but disputes the power of the city to tax the 80%, representing activities outside the city and the State. It argues that the city, inconsistently, does not claim the power to tax the total receipts from contracts providing for the straight sales of materials or those separating the sales of materials from services rendered' in erecting the materials on site. It argues that the differences among the forms of contract is insubstantial for tax law purposes, and represents simply a choice extended to its customers for their convenience.

The city argues that the form of the contracts, whether lump sum, or divided into the sale of materials and the erection of structures with separate price terms, is determinative. It points out that a lump sum contract is a unitary, undivided one, by conscious act of the parties, while a material and service contract, is effectively divided into separable parts with separable price allocations. It argues further that the tax incidence on the transactions will vary accordingly, not only under the gross receipts privilege tax presently involved, but under other local taxes imposed, such as the local sales and use taxes.

Taxpayer's argument for a realistic analysis of tax incidence would be generally appealing, but complete realism also requires recognition that taxing patterns are largely designed to match the traditional forms of doing business. Consequently, traditional forms and traditional concepts bearing on the nature of

business transactions are most likely to provide the keys to understanding just what it is on which the tax is imposed and whether it satisfies constitutional limitations. Thus, in *Western Live Stock* v. *Bureau* (303 U. S. 250, 259), it was said by the court (per STONE, J., later Ch. J.) : "Experience has taught that the opposing demands that the commerce shall bear its share of local taxation, and that it shall not, on the other hand, be subjected to multiple tax burdens merely because it is interstate commerce, are not capable of reconciliation by resort to the syllogism. Practical rather than logical distinctions must be sought."

Taxpayer does not dispute that the building construction business is characterized as a localized business, therefore wholly subject in its gross receipts to a local privilege tax (*Holland Furnace Co.* v. *Department of Treasury*, 133 F. 2d 212, 215–216 [7th Cir.], cert. denied 320 U. S. 746). The city, on the other hand, does not dispute that the interstate sale of personal property is not a localized business, and that the gross receipts or income of such a business received or earned outside the taxing unit would be subject, at best, only to allocation under a privilege tax imposed by the taxing unit in which only one part of the unitary business is conducted (*Hans Rees' Sons* v. *North Carolina*, 283 U. S. 123). The simple question then is where do the lump sum contracts in this case fall.

Any local builder undoubtedly may acquire the bulk of his supplies from outside the city by purchase; this would hardly reduce his liability for taxes on his gross receipts or subject them to allocation. On the other hand, the outside seller to him of such supplies would be subject to no privilege tax, or, at worst, to an allocated tax, if it did any business in the city. In that event the outside seller may have to pay a local sales tax, or the buyer a local use tax (Administrative Code of City of New York, § M41–16.0 *et seq.*; § N41–1.0 *et seq.*; Regulations of the Comptroller of the City of New York, Sales and Compensating Use Tax Laws, art. 97, as effective during privilege years in question, now Regulations of the Director of Finance, art. 109). Either way, however, the gross cost of construction would be subjected to local taxation, of one kind or another.

So, it becomes evident that even in converse situations, the traditional forms of doing business may vary the incidence of taxation, but the entire pattern of taxes is not likely to be escaped. Put another way, the materials involved in the erections in the city are either interstate sales, with concomitant tax incidence, or are materials used in construction, a wholly localized activity, also with concomitant tax incidence. On this

view, taxpayer's installation or erection in the city of prefabricated, transported structural steel, under an undivided lump sum contract, is a localized construction activity from which the gross receipts are taxable without allocation.

The precise problem involved here arose in *James v. Dravo Contr. Co.* (302 U. S. 134). In that case, simplifying the facts for the purposes here, there was involved a Pennsylvania corporation which fabricated structural materials in its home State. Some, but not all, of the materials were paid for in Pennsylvania and title was taken by the purchaser, the United States Government. All of the materials were used in erections built by the taxpayer in West Virginia for the customer, the United States Government. Chief Justice HUGHES, on behalf of the court, held that with respect to so much of the structural material to which title passed in Pennsylvania the State of West Virginia could not tax such receipts except, perhaps, by way of allocation (pp. 139–140). On the other hand, the construction activities at the site were described as local and not in interstate commerce and, consequently, there was no constitutional right to immunity from local taxation (p. 158). This reading is justified by what happened in the ensuing appeals in the same case.

In *Dravo Contr. Co. v. James* (114 F. 2d 242 [4th Cir.]), Judge PARKER, on behalf of the Court of Appeals, held that insofar as materials to which title had passed in Pennsylvania were concerned there could be no allocation because the West Virginia statute did not provide for such allocation. It was pointed out, further, that allocation was a legislative and not a judicial function, so that if any part of the receipts taxed were immune as attributable to interstate commerce, the entire tax assessed would be invalid. On the other hand, it was unequivocally held that the business of erecting locks and dams within the State of West Virginia was a localized activity, the gross receipts or income from which were subject to the power of the situs State to tax. It was said (pp. 245–246):

" The business here involved was contracting for the erection of locks and dams within the state. With the exception of the deliveries and the fabrication at the Pittsburgh plant, for which partial payments were made with passage of title to the government, all of the activities upon which payments were made occurred within the state, and the income derived therefrom was subject to the state's power to tax. Certainly property brought within the state was rendered subject to that power; and no distinction can be drawn between the state's power to tax the property and its power to tax income received upon

delivery of the property within the state by the contractor or its incorporation by him in the dams and locks. &ast; &ast; &ast;

'' Not only is it clear from the language of the Supreme Court first quoted, that its intention was that only those portions of taxpayer's income derived from payments made upon delivery or fabrication at the Pittsburgh plant should be excluded from income in computing the tax, but this is the interpretation placed upon its decision by the Supreme Court itself in the later case of Ford Motor Co. v. Beauchamp, 308 U. S. 331, 60 S. Ct. 273, 276, 84 L. Ed. 304. In that case, which upheld a corporate franchise tax, the court distinguished its prior decision in this case, saying: ' James v. Dravo Contracting Company contains nothing contrary to this view. The statute under consideration there levied a privilege tax '' equal to two per cent of the gross income of the business.'' In so far as it was *upon receipts in other states for work done in other states,* it was conceded to be outside of the taxing power of the statute.' '' (Emphasis by Court of Appeals.)

The Supreme Court subsequently denied certiorari (312 U. S. 678, 312 U. S. 714). Moreover, in *Department of Treasury* v. *Wood Corp.* (313 U. S. 62, 67), the court cited the opinion in the *Dravo* case (*supra*) at the Court of Appeals, with approval.

In short, there is a difference, in determining the tax incidence, and therefore its validity, whether the form of doing business involves the sale of materials (with the passage of title) outside the taxing unit, or the incorporation of materials into construction on site within the taxing unit under a contract for construction in which there is no sale of the materials.&ast; Thus, in the material and service contracts the parties agreed to the sale of the prefabricated materials, and on prefabrication, title to the appropriated materials passed to the buyer. On the other hand, under the lump sum contracts the prefabrication of materials was no more than preparation by the taxpayer to perform its contract on the site within the local taxing unit.

As already suggested, taxpayer's reliance upon the *Hans Rees'* case (283 U. S. 123, *supra*) is misplaced. That case represents an attempt by the taxing unit, North Carolina, in which the initial manufacturing process occurred, to subject to local

&ast; For a precisely parallel counterpoint, see, *Gross Income Tax Division* v. *Surface Combustion Corp.*, 232 Ind. 100, cert. denied 346 U. S. 829, involving the interstate sale of personal property with incidental installation in the taxing state, and *Gross Income Tax Division* v. *Fort Pitt Bridge Works*, 227 Ind. 538, involving a "lump sum" contract for construction, although the materials and construction services were supplied by different corporations.

taxation the income from the sale of the hides in the New York market, clearly a transaction in interstate commerce, without proper allocation (see *Matter of United Piece Dye Works* v. *Joseph,* 282 App. Div. 60, 64, affd. 307 N. Y. 780, cert. denied 348 U. S. 916).

Accordingly, the determination of the Comptroller should be confirmed, with costs to respondent-respondent.

RABIN, VALENTE, STEVENS and NOONAN, JJ., concur.

Determination unanimously confirmed and the petition dismissed, with $20 costs and disbursements to respondent.